**Opinion issued February 27, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

**NO. 01-22-00573-CV**

———————————————

**PRESTON MARSHALL, INDIVIDUALLY AND RUSK CAPITAL MANAGEMENT, L.L.C., Appellants**

**V.**

**MAROPCO, INC. AND E. PIERCE MARSHALL, JR., Appellees**

On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2015-35950

# O P I N I O N

Appellants, Preston Marshall ("Preston") and Rusk Capital Management, L.L.C. ("Rusk Capital") (collectively, "appellants"), challenge the trial court's judgment, entered after a bench trial, in appellants' suit against appellees, MarOpCo, Inc. ("MarOpCo") and E. Pierce Marshall, Jr. ("Pierce Jr.")

(collectively, "appellees"), for wrongful termination, breach of contract, tortious interference with existing contracts, violation of privacy rights, conversion, trespass to chattel, harmful access by computer,[1] misappropriation of trade secrets, breach of fiduciary duty, constructive fraud, fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction,[2] conspiracy, and declaratory relief.[3] In seventeen issues, appellants contend that the trial court erred in granting summary judgment in favor of appellees on certain claims, interpreting a jury waiver provision, finding in favor of MarOpCo on certain claims and counterclaims, and awarding certain tangible property, attorney's fees, and disgorgement.

We affirm.

---

[1]   *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 143.001–.002; *see also* TEX. PENAL CODE ANN. § 33.02.

[2]   *See* TEX. BUS. & COM. CODE ANN. § 27.01.

[3]   *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011.

## Background[4]

In their eleventh amended petition, appellants alleged that Preston worked for MarOpCo, an "administrative services provider for a group of businesses owned, operated, and/or managed by" Preston's family (the "Marshall family"), as well as its parent company, Trof, Inc. ("Trof"), in varying capacities for nineteen years. Elaine Marshall ("Elaine"), Preston's mother, is the president and chief executive officer ("CEO") of MarOpCo and Trof. For over thirty years, MarOpCo and Trof maintained an office located at 7600 Tidwell, Suite 800, Houston, Texas (the "Tidwell office"), where Preston worked.

### Preston's Employment with MarOpCo and Trof

According to appellants, in July 2006, Preston became the executive vice president of Trof and was responsible for managing the company's "day to day operations," establishing pay structures for employees, performing banking duties, signing promissory notes, contracts, and other documents, keeping books and

---

[4] At the outset, we note that this case contains a voluminous record. The Court has reviewed the complete record in this appeal. *See* TEX. R. APP. P. 47.1; *Obernhoff v. Nelson*, No. 01-17-00816-CV, 2019 WL 4065017, at *18 n.19 (Tex. App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.). Yet, "[b]ecause the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it." *Sullivan v. Arguello Hope & Assocs., PLLC*, No. 03-18-00144-CV, 2018 WL 6424200, at *1 n.2 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.). Additionally, we note that this is not the first instance the parties have been before this Court. *See, e.g.*, *Hunter v. Marshall*, No. 01-16-00636-CV, 2018 WL 6684840 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.).

records, negotiating contracts and loans, serving as the chief operating officer, and "having general management authority." Prior to being named executive vice president, Preston served Trof in a consulting capacity for ten years.

On September 17, 2010, Preston signed an employment agreement with MarOpCo (the "2010 employment agreement") and became its president. Preston performed his duties and responsibilities for MarOpCo pursuant to the 2010 employment agreement until December 2014. According to Preston, his employment relationship with MarOpCo was "at will." (Internal quotations omitted.)

On December 5, 2014, Preston received a new employment agreement (the "2014 employment agreement") for the position of vice president of MarOpCo. Under the terms of the 2014 employment agreement, Preston could not have counsel review the agreement or negotiate any of its terms, and he was required to sign the agreement within ten days. The 2014 employment agreement reduced Preston's base salary by approximately fifty percent, and MarOpCo reserved the right to terminate his employment at any time without cause. However, the 2014 employment agreement entitled Preston, if his employment was terminated, to be paid all accrued salary, benefits, and unused paid time off. Preston was led to believe that MarOpCo's other vice president, Pierce Jr., Preston's brother, had received an employment agreement identical to the 2014 employment agreement.

4

While employed by MarOpCo and Trof, Preston worked at the Tidwell office, and in addition to his duties and responsibilities for MarOpCo and Trof, he maintained oversight of his personal affairs and other businesses and charitable entitles (collectively, the "other entities")[5] at the Tidwell office. According to appellants, in performing his duties and responsibilities on behalf of his personal affairs and the other entities, Preston used and relied on files, correspondence, records, reports, documents, and other data and information that he maintained at the Tidwell office. Appellants alleged that Preston's actions in overseeing his personal affairs and the other entities at the Tidwell office were known and ratified by MarOpCo and Trof.

In 2014, while employed by MarOpCo and Trof, Preston created Rusk Capital, an equity investment firm focusing on the purchase of oil and gas producing properties, including Idzig, LLC ("Idzig"), an entity owned by Elaine and Pierce Jr., administered by MarOpCo and managed by Preston. Appellants

---

[5] These other entities included: Marshall Heritage Foundation (f/k/a Marshall Museum and Library); Marshall Legacy Foundation; Eleanor Pierce Stevens Foundation; EPS/EPM Charitable Reminder Unitrust; Eleanor Pierce (Marshall) Stevens Living Trust; Eleanor Stevens Revocable Gift Trust; Bettye Morgan Charitable Remainder Unitrust; Bettye Morgan Supplemental Charitable Remainder Unitrust; Ada Estes Charitable Remainder Unitrust; Ada Estes Supplemental Charitable Remainder Unitrust; Peroxisome Charitable Lead Trust; Citrine Commerce L.L.C.; Lysosome L.L.C.; Chondriosome Stiftung; Khozraschyot Capital Management L.L.C.; Lednik Capital Management L.L.C.; Glacier Holdings L.L.C.; Rusk Capital; and CarTech Systems LLC.

5

alleged that Preston, the sole owner and manager of Rusk Capital, created the company with the express knowledge of MarOpCo, Trof, and their agents.

According to appellants, the Marshall family attorney, Edwin K. Hunter, was the impetus behind Rusk Capital's creation because he told Preston that Elaine had suggested the idea. In February 2014, Hunter advised Preston to "create an entity whose sole purpose w[ould be] to purchase Idzig . . . from Elaine and Pierce[] Jr." Under Hunter's proposal, Preston would either buy all the membership interests in Idzig or create Rusk Capital, which Preston would control, to purchase Idzig's assets. Based on Hunter's suggestion, Preston created Rusk Capital and agreed to pursue the opportunity to purchase Idzig.[6]

After Rusk Capital was created and before Preston's employment with MarOpCo was terminated, Rusk Capital maintained its principal office at the Tidwell office. Accordingly, Preston purchased, used, and/or relied on computers, computer servers, and other property maintained at the Tidwell office for purposes of conducting Rusk Capital's business. For instance, Preston purchased a computer server on behalf of Rusk Capital (the "Rusk Capital server") to store data for the company, his personal affairs, and the other entities.[7] And Preston and/or

---

[6]   According to appellants, during the negotiations for the purchase of Idzig by Rusk Capital, Elaine removed Preston as the managing member of Idzig, and the transaction between Rusk Capital and Idzig never closed.

[7]   Appellants noted that because a MarOpCo-owned server "had reached maximum capacity, was affected by frequent age-related hardware failures, [was] out of date,

Rusk Capital became the sole licensees of several software applications purchased for the use of Rusk Capital, Preston's personal affairs, and the other entities.

Because Rusk Capital gathered and analyzed information about potential investors and investment opportunities related to oil and gas producing properties, it maintained trade secrets and proprietary and confidential information at the Tidwell office, including, but not limited to, employee records and information about actual and potential investors, investment opportunities, business strategies, business analysis, and due diligence.

### *Termination of Preston's Employment*

On May 22, 2015, while employed by MarOpCo and Trof, Preston received, at the Tidwell office, a letter from Elaine (the "May 22, 2015 letter"), instructing him to "consent to the transfer of funds related to various entities from one bank to another." After the transfer, Preston "would have no signatory authority on any of the newly established accounts and would no longer receive monthly statements on such accounts." Preston complied with the letter's instructions related to the transfer of funds for all entities, except for one, Ribosome, L.P. ("Ribosome"), based on a fiduciary duty that he believed he owed to Chondriosome Stiftung ("Chondriosome"), an entity that owned "substantially all the funds" in the

---

and was unable to meet the demands of MarOpCo's business, Rusk Capital allowed MarOpCo to transfer files from the MarOpCo server to the Rusk [Capital] [s]erver." Rusk Capital also permitted MarOpCo "to continue to store data and information on the Rusk [Capital] [s]erver."

7

Ribosome account. The May 22, 2015 letter also instructed Preston to execute a prepared affidavit related to certain litigation in Louisiana. Preston refused to execute the affidavit because "it was based on false, material statements concerning Preston's relationship to various entities and was intended to interfere with litigation that was completely unrelated to MarOpCo, Trof or Elaine." Instead, "it was solely for the benefit of Pierce[] Jr. and . . . Hunter."

On June 11, 2015, Preston received a letter (the "June 11, 2015 termination letter"), terminating his employment with MarOpCo and Trof, effective immediately, purportedly because he did not follow the instructions in the May 22, 2015 letter. The June 11, 2015 termination letter also stated that Preston no longer had access to the Tidwell office, but that Preston "could resume his employment with Trof and MarOpCo if he agreed to transfer the money that belonged to Chondriosome." The letter noted that Preston had been conducting personal business at the Tidwell office.

Appellants further alleged that MarOpCo then "directed the lease management company of the Tidwell office to deactivate all access entry cards in Preston's possession and to change the locks on the secured doors." And the Rusk Capital server and computer system were disconnected.

Thereafter, MarOpCo removed and took possession and control of appellants' property, computers, server, files, office equipment, furniture, and

confidential and proprietary information, including, but not limited to: "records, files, and data used and relied on by Preston to carry out his personal affairs and to meet his fiduciary obligations with respect to the [other] [e]ntities" and communications between Preston and his attorneys. As a result, Pierce Jr. obtained copies of, and misused appellants' property and confidential and privileged information in litigation involving Preston. Hunter and Pierce Jr. made "copies of the servers and computers [located at the Tidwell office] and the information contained therein along with physical paper files." Hunter, MarOpCo, and Pierce Jr. misused the information and data from the Rusk Capital server.

***Preston and the Marshall Family***

As to Preston's relationship with his family, appellants alleged that Preston worked closely with his father, E. Pierce Marshall Sr. ("Pierce Sr."), for MarOpCo at the Tidwell office before Pierce Sr.'s death. During that time, Preston was "involved in all aspects of administering the multitude of entities, litigation and tax matters as well as setting up the entities that could control Pierce Sr.'s wealth." "In addition to working on estate planning, Preston helped Pierce[] Sr. organize other aspects of the Marshall family business," and according to appellants, Pierce Sr. "told numerous people on several occasions that he wanted Preston to manage various pieces of the family enterprise after he had passed." Pierce Sr.'s "preference that Preston, in conjunction with [Elaine], handle business and estate

9

affairs for the Marshall [f]amily had been . . . expressed directly by Pierce[] Sr."
before his death.

Following Pierce Sr.'s death, in 2006, Preston was placed in a position where he "would likely manage most of the Marshall [family] business one day." But Preston, "out of love and loyalty for [Elaine], attempted to follow her directives, within the bounds of law." Preston "taught all of the employees of MarOpCo that Elaine was the boss."

### Appellants' Claims Against MarOpCo and Pierce Jr.

Appellants brought claims against appellees for wrongful termination, breach of contract, tortious interference with existing contracts, violation of privacy rights, conversion, trespass to chattel, harmful access by computer,[8] misappropriation of trade secrets, breach of fiduciary duty, constructive fraud, fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction,[9] conspiracy, and declaratory relief.[10]

As to appellants' claim for wrongful termination against MarOpCo, appellants alleged that Preston was an at-will employee of both Trof and MarOpCo, and Preston's employment with both Trof and MarOpCo was

---

[8]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 143.001–.002; *see also* TEX. PENAL CODE ANN. § 33.02.

[9]    *See* TEX. BUS. & COM. CODE ANN. § 27.01.

[10]   *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011.

terminated solely because he refused to commit illegal acts—a felony offense under Texas Penal Code section 32.45, which would require Preston to "commit a misapplication of fiduciary property," and a felony offense under Texas Penal Code section 37.03, which would require Preston to "make a false statement under oath in connection with an official proceeding." Because Preston failed to comply with MarOpCo's directives by refusing "to commit illegal acts," his employment was terminated.

As to appellants' breach-of-contract claim against MarOpCo, appellants alleged that the 2014 employment agreement required that MarOpCo pay Preston "all his accrued salary, benefits and personal time off if he was terminated without cause" or "with cause." However, according to appellants, MarOpCo "failed to pay Preston in accordance" with the 2014 employment agreement, and thus, breached the contract. Appellants also alleged that MarOpCo breached the 2014 employment agreement by not providing Preston with "written notice" and opportunity to "cure the complained[-]of conduct."

As to appellants' claim for tortious interference with existing contracts against Pierce Jr., appellants alleged that Pierce Jr. willfully and intentionally interfered with the 2010 and 2014 employment agreements. Specifically, Pierce Jr. caused MarOpCo to terminate the 2010 employment agreement "in favor of the 2014 [e]mployment [a]greement [which] . . . greatly reduced [Preston's] base

11

salary." Additionally, appellants alleged that Pierce Jr. "caused MarOpCo to breach the 2014 [e]mployment [a]greement with Preston."

As to appellants' claim for violation of privacy rights against appellees, appellants alleged that appellees violated their privacy rights "by knowingly taking possession of [appellants'] private data," including certain privileged information. According to appellants, appellees "strategically searched Preston's privileged emails and then published those emails in a public forum."

As to appellants' conversion claim against appellees, appellants alleged that they owned or had possession of physical property located at the Tidwell office, including the Rusk Capital server, two computers, flash drives, and other electronic equipment and images; appellees unlawfully and without authorization removed appellants' property from the Tidwell office and assumed and exercised control over the property in a manner that was inconsistent with appellants' rights as owners. Appellees also, without right or permission, took "one or more electronic images of [appellants'] privileged [information] and transferred that image onto an external hard drive." And they took and used Preston's privileged email communications and a hard drive containing such information "in a manner that [was] inconsistent with Preston's ownership rights and/or right of possession."

As to appellants' trespass-to-chattel claim against appellees, appellants alleged that appellees wrongfully interfered with their use and possession of their

property located at the Tidwell office, thereby depriving appellants of the use of their property for a substantial period of time. And appellees were continuing to prevent appellants from accessing their property.

As to appellants' claim for harmful access by computer against appellees, appellants alleged that they owned and/or operated a "secure computer system (computers, servers, networks), which store[d] information that [was] only accessible by certain authorized individuals, including Preston." The computer system contained and stored appellants' confidential records and documents, containing information about investment opportunities, potential investors, investment strategies, and employees. The computer system also contained other confidential information owned by Preston, including records and documents protected by his right to privacy, the attorney-client privilege, and the work-product privilege. Appellees "knowingly accessed, disassembled, imaged[,] and physically moved [appellants'] secure computer system and databases" without appellants' consent. Appellees also accessed Preston's confidential and privileged information, "made an image of that information and copied th[at] image onto an external hard drive," and used the information and hard drive to their advantage and to appellants' detriment.

As to appellants' misappropriation-of-trade-secrets claim against MarOpCo, appellants alleged that they "own[ed] all right, title and interest in their trade

13

secrets and confidential and proprietary information" and MarOpCo "misappropriated [appellants'] trade secrets through improper means in violation of" the Texas Uniform Trade Secrets Act ("TUTSA").[11] According to appellants, "MarOpCo knowingly obtained [appellants'] trade secrets and confidential and proprietary information . . . when MarOpCo unlawfully exercised dominion and control over [appellants'] computer systems and secure databases, without authority or right." Appellants alleged that MarOpCo's conduct was willful and malicious and resulted in damages to appellants.

As to appellants' breach-of-fiduciary-duty and constructive-fraud claims against Pierce Jr., appellants alleged that Pierce Jr. owed Preston fiduciary duties because of their purported "co-beneficiaries" status in a trust. According to appellants, Pierce Jr. owed a duty "of refraining from instigating a breach of trust, persuading the trustee to violate his trust, or taking part with the trustee in a breach." Because Pierce Jr. violated his duties, he also committed constructive fraud.

As to appellants' fraud, fraudulent-inducement, and fraudulent-concealment claims against appellees, appellants alleged that Pierce Jr. "made material misrepresentations and/or omissions to [appellants]," Pierce Jr. "knew the representations were false when he made them, or made them recklessly, as a

---

[11] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001–.008.

14

positive assertion, without knowledge in their truth," Pierce Jr. intended for appellants "to rely on the misrepresentations and/or omissions," and appellants relied on the false representations to their detriment by entering into the 2014 employment agreement.

As to appellants' claim for fraud in a stock transaction against MarOpCo, appellants alleged that MarOpCo "made false representations of past and/or existing material facts regarding putting Preston in possession of [certain disclaimed] Trof shares"; the false representations were made to induce Preston into entering the 2014 employment agreement; and Preston relied on the representations in entering into the agreement.

As to appellants' conspiracy claim against appellees, appellants alleged that appellees engaged in a conspiracy "to gain wrongful access to [appellants'] computer equipment, to convert Preston's [p]rivileged [i]nformation, to violate [appellants'] privacy, to limit Preston's access to important data, and to wrongfully remove Preston from his positions at Trof and MarOpCo."

As to appellants' claim for declaratory relief against MarOpCo, appellants sought various declarations, including declarations that "the restrictive covenants" found in the 2014 employment agreement were unenforceable, Preston was "entitled to permanent access to all data [appellees] removed from the . . . Tidwell

15

office," Preston was "entitled to receive information and documents" related to certain entities, and Preston was to be "reinstated as an officer of Trof."

*Appellees' Answer and MarOpCo's Counterclaims*

Appellees answered, generally denying the allegations in app2ellants' petition and asserting various affirmative defenses.[12]  MarOpCo also asserted that it was entitled to attorney's fees and costs pursuant to the 2014 employment agreement for defending against appellants' breach-of-contract claim.

MarOpCo then filed counterclaims against appellants.  In its first amended counterclaim, MarOpCo alleged that Preston previously served as the vice president of MarOpCo and he owed fiduciary and contractual duties to MarOpCo.  According to MarOpCo, under the 2014 employment agreement, Preston, among other things, agreed to devote his full time and energies to serving as vice president, act in MarOpCo's best interests at all times, perform the duties assigned to him by MarOpCo, keep secret and confidential information secret, not make any statement or disclosure that would be a detriment to MarOpCo, not compete with MarOpCo, and promptly deliver and return all of MarOpCo's property upon termination.  Under the 2014 employment agreement, Preston also agreed that certain items of property belonged to MarOpCo and that he would not allow a third party to use such property without written approval from MarOpCo.  Notably, the

---

[12]     Appellees filed separate answers.

16

Rusk Capital server, workstations, software, and other data that Preston "claim[ed] to own," "all constitute[d] improvements, trade secrets, data, documentation, ideas and writings, and applications that [were] the exclusive property of MarOpCo."

MarOpCo further alleged that Preston previously worked at the Tidwell office for MarOpCo. Because confidential information and documents were maintained at the Tidwell office, Elaine, MarOpCo's president and CEO, expressly instructed Preston to not allow "any company she did not own or control [to] use" the Tidwell office. (Emphasis omitted.) Preston received letters regarding her directive.

Additionally, MarOpCo alleged that Preston's employment with MarOpCo was terminated for insubordination, and on June 11, 2015, Preston was notified in writing that he was no longer authorized to access the Tidwell office. The June 11, 2015 termination letter also demanded that Preston return all MarOpCo's property, but Preston failed to do so. In contravention to the June 11, 2015 termination letter, Preston "bypassed building security and entered the [Tidwell] office by falsely telling the cleaning staff [that] he had [the] authority to do so."

Further, after termination of Preston's employment, MarOpCo discovered that Preston had engaged in significant additional misconduct both before and after his termination, including, but not limited to: using a service to "wipe clean" MarOpCo's computers and server; physically destroying MarOpCo's computer

17

equipment and server; purchasing a new server, i.e., the Rusk Capital server, and computer workstations for the Tidwell office; wrongfully assuming control over MarOpCo's electronic data; co-mingling MarOpCo's electronic data with data he claimed belonged to him or Rusk Capital; hiring an employee to work for Rusk Capital and giving the employee access to the Tidwell office; acquiring, disclosing, and misappropriating MarOpCo's confidential information, assets, trade secrets, and electronic data; forming Rusk Capital to compete in the same business as MarOpCo; devoting substantial energy and time to pursuing other personal business ventures; attempting to transfer software licenses belonging to MarOpCo to Rusk Capital; claiming control over MarOpCo's electronic data; destroying and deleting vast amounts of MarOpCo emails; and appropriating the maropco.com domain name.

MarOpCo brought counterclaims against Preston for breach of contract, breach of fiduciary duty, breach of duty of loyalty, violation of the Computer Fraud and Abuse Act,[13] harmful access by computer,[14] and trespass. MarOpCo brought counterclaims against appellants for conversion and misappropriation of trade secrets. MarOpCo sought damages, disgorgement, exemplary damages, and attorney's fees and costs.

---

[13]    *See* 18 U.S.C. § 1030.

[14]    *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 143.001–.002; *see also* TEX. PENAL CODE ANN. § 33.02.

Appellants answered, generally denying the allegations in MarOpCo's counterclaim and asserting certain affirmative defenses.

*Summary Judgments*

Appellees filed multiple summary-judgment motions on appellants' claims against them.[15]  Initially, appellees moved for summary judgment on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction, and tortious interference with existing contracts,[16] arguing that they were entitled to summary judgment as a matter of law on appellants' fraud-based claims because the 2014 employment agreement contained a waiver-of-reliance provision in which Preston agreed that he had "not relied on any representation or inducement made by any officer, employee or representative" of MarOpCo; Preston also agreed that the 2014 employment agreement constituted his "entire agreement and understanding with MarOpCo; no other representation or inducement had been made to him, . . . he was relying on his own judgment and investigation in executing" the 2014 employment agreement; and Preston "confirmed that any prior agreement similar to th[e] subject matter [had been] revoked."  (Emphasis omitted.)  Additionally, appellees argued that they were

---

[15]  Appellees filed separate summary-judgment motions in the trial court, but for ease of this opinion, we will discuss appellees summary-judgment arguments together, unless distinction is necessary.  Further, we only reference the motions for summary judgment to which appellants have assigned error on appeal.

[16]  Appellants only brought a claim for tortious interference with existing contracts against Pierce Jr.

19

entitled to judgment as a matter of law on appellants' fraud-based claims because Preston could not "show that [any of] his alleged reliance was justified," Elaine's alleged promise to give Preston Trof stock in the future was unenforceable, and Preston was not entitled to damages for the value of the Trof shares. Further, as to appellants' fraud-in-a-stock-transaction claim, appellants argued that the claim must fail "because the [2014 employment agreement was] not a transaction for the sale of stock." Finally, as to appellants' claim for tortious interference with existing contracts against Pierce Jr., Pierce Jr. argued that the claim failed as a matter of law because Elaine, and not Pierce Jr., terminated Preston's employment due to his wrongful conduct and Pierce Jr., as an agent and officer of MarOpCo at the time of Preston's termination, could not be held liable for tortious interference with the 2010 and 2014 employment agreements.[17]

The trial court granted appellees summary judgment on appellants' claims against them for fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction, and tortious interference with existing contracts, and dismissed those claims with prejudice.

MarOpCo then moved for summary judgment on Preston's claim for wrongful termination, arguing that it was entitled to judgment as a matter of law on that claim because "an employer may terminate its at-will employee for good

---

[17] Appellants filed a response to appellees' summary-judgment motion.

cause, bad cause, or no cause at all" and Preston's employment was not terminated because Preston refused to commit an "illegal act." (Internal quotations omitted.) Instead, according to MarOpCo, it "fired Preston for other entirely legitimate reasons": (1) Preston "refused to give up control of MarOpCo bank accounts" and "refused to consent to signatory changes for the Idzig account, which resulted in Frost Bank freezing it"; (2) Preston "open[ly] refus[ed] to pay company invoices approved by [Elaine,] MarOpCo's president"; (3) Preston "disobeyed express instructions by using [the Tidwell] office for his businesses that were not owned or controlled by [Elaine]" and Preston "hired an employee of Rusk Capital," Sheldon Black, "to work out of [the Tidwell] office"[18]; (4) Preston "secretly sold affiliated assets to himself"; and (5) Preston "refused to stop seeking documents from [Elaine's] lawyers."[19]

MarOpCo attached to its summary-judgment motion, among other things, a letter, dated December 5, 2014, which Elaine sent Preston. That letter stated:

> Attached is the [2014] [e]mployment [a]greement and its exhibit for your engagement as [v]ice [p]resident of MarOpCo . . . for 2015. This needs to be executed with the original signature being

---

[18] MarOpCo noted in its summary-judgment motion that Rusk Capital's employee, Black, used the address of the Tidwell office in his signature block on Rusk Capital documents, which "directly contravened [Elaine's] instruction to Preston that he should 'be sure no entities, other than those [that] she own[ed] or control[led] ha[d] the Tidwell [office] address listed on any document.'" Black also "used MarOpCo's office space and facilities to work for Rusk Capital."

[19] Appellants filed a response to MarOpCo's summary-judgment motion.

returned to . . . the Dallas office, no later than December 15, 2014. . . .

This contract offer supersedes the existing employment contract, which will now terminate on January 1, 2015. If I do not receive the executed employment agreement as describe in this letter, compensation from MarOpCo . . . will cease on January 1, 2015. This is not an offer to negotiate. No revisions will be considered or accepted. An identical letter and agreement as it relates to the [e]mployment [a]greement is being submitted to the other [v]ice [p]resident of MarOpCo . . . .

. . . .

Finally, *please be aware that I do not authorize the use of the Tidwell [office] for any entity that I do not control. Please be sure no entities, other than those I own or control have the Tidwell [office] address listed on any document.*

(Emphasis added.)

MarOpCo also attached to its summary-judgment motion the 2014 employment agreement, signed by Preston and Elaine. The 2014 employment agreement provided, in pertinent part:

2. <u>Performance of Duties</u>. [Preston] agrees that during the Employment Term, [he] shall (a) devote [his] full time, energies and talents exclusively to serving in the capacity of Vice President of [MarOpCo], (b) act at all times in the best interests of [MarOpCo], and (c) perform the duties assigned to [him] by the President of [MarOpCo] faithfully, efficiently and in a professional manner.

. . . .

5. <u>Termination and Compensation Due Upon Termination</u>. . . .

(a) Termination Without Cause.  [MarOpCo] shall have the right to terminate [Preston's] employment at any time during the Employment Term without Cause . . . .

. . . .

(d) Termination for Cause.  [MarOpCo] shall have the right to terminate [Preston's] employment at any time during the Employment Term for Cause. . . .

Additionally, MarOpCo attached the June 11, 2015 termination letter that Elaine sent to Preston, terminating his employment with MarOpCo.  In the termination letter, Elaine stated:

As President, [CEO], and Sole Director of MarOpCo . . . [,] I notify you that your employment by [MarOpCo] is hereby terminated. . . .

Sadly, you have consistently dismissed my instructions.  This has impeded operations and created unnecessary financial burdens. . . .

. . . I understand that you have an employee using the [Tidwell] office for your personal business.  This person has no authority to be on the MarOpCo premises.  Do not remove property from the [Tidwell] office[]. . . .

The trial granted MarOpCo summary judgment on Preston's claim for wrongful termination and ordered that claim dismissed with prejudice.

Appellees next moved for summary judgment on appellants' claims for violation of privacy rights, misappropriation of trade secrets, conversion, trespass to chattel, harmful access by computer, conspiracy, and declaratory relief, asserting

23

that they were entitled to judgment as a matter of law on appellants' claims and no evidence supported certain elements of appellants' claims.[20]

As to appellants' claims for violation of privacy rights, including their claim for public disclosure of private information and "intrusion upon seclusion," appellees argued that they were entitled to judgment as a matter of law on those claims because a "public-disclosure claim . . . require[d] evidence that the information ultimately publicized contain[ed] highly intimate or embarrassing facts about a person's private affairs," there were no allegations of Rusk Capital's "private matters" being publicly exposed or intruded upon, "MarOpCo did not intrude upon [appellants'] seclusion, solitude, or privacy," "there exist[ed] no expectation of privacy as a matter of law for an employee communicating using his employer's email and other systems," "any alleged intrusion would not be highly offensive to a reasonable person," and appellants could not prove that Preston suffered an injury from an alleged intrusion. (Internal quotations omitted.) Appellees also asserted that appellants had no "evidence to support their claim for violation of privacy based on public disclosure of private facts" or their claim "for violation of privacy based on intrusion upon seclusion."

---

[20] Appellees filed separate summary-judgment motions on appellants' claims for violation of privacy rights, misappropriation of trade secrets, conversion, trespass to chattel, harmful access by computer, and conspiracy, but Pierce Jr. joined and "incorporate[d] fully" the arguments from MarOpCo's matter-of-law and no-evidence summary-judgment motion. Pierce Jr. also asserted additional arguments in his summary-judgment motion.

As to appellants' misappropriation-of-trade-secrets claim, appellees explained that appellants had alleged in their petition that "MarOpCo [had] knowingly obtained [appellants'] trade secrets and confidential and proprietary information . . . when MarOpCo unlawfully exercised dominion and control over [appellants'] computer systems and secure databases." In other words, appellants had asserted that MarOpCo had "misappropriated their 'trade secrets' by taking their 'computer systems and databases.'" But appellants could not (1) "identify any trade secrets with specificity," (2) "prove their ownership of any such 'trade secret,'" (3) any trade secrets developed by Preston during his employment with MarOpCo were the property of MarOpCo, (4) appellants had not "disclosed [any purported] trade secrets to MarOpCo," (5) and appellants could not identify any injury. Appellees also asserted that appellants "ha[d] no evidence to support [the elements of] their claim for misappropriation of trade secrets."

As to appellants' conversion claim, appellees explained that appellants had alleged that "MarOpCo removed electronic equipment belonging to Preston and Rusk [Capital which was] stored at the [Tidwell] office, and that MarOpCo kept electronic images on a hard drive of emails that Preston exchanged using his maropco.com email address." But appellants' conversion claim failed as a matter of law because there existed "no genuine issue that Preston d[id] not own, possess or have any right to immediate possession of any property from the [Tidwell]

25

office."  Preston was "already on notice that all information, documents, or emails stored on a MarOpCo[-]owned computer, the MarOpCo server, or through a MarOpCo.com email address [were] explicitly the property of [MarOpCo]" and appellants should have had "no expectation of privacy for said documents or emails."  (Internal quotations omitted.)  The 2014 employment agreement made clear that MarOpCo owned everything that Preston created during his employment. Additionally, MarOpCo "lawfully and with authorization accessed [appellants'] alleged property," and appellants had failed to disclose any damages for conversion.  Appellees also asserted that appellants had "no evidence to support their claim for conversion."

As to appellants' trespass-to-chattel claim, appellees stated that appellants had alleged in their petition that appellees had "wrongfully interfered with [appellants'] use and possession of their 'property,' without specifying what property they [were] referring to."  According to appellees, they were entitled to judgment as a matter of law on appellants' trespass-to-chattel claim because MarOpCo owned all property at the Tidwell office and all data, information, and communications transmitted across its email domain and systems, appellants had no expectation of privacy in their alleged property stored at the Tidwell office without authorization, and appellants had failed to disclose any damages.

26

Appellees further asserted that appellants had "no evidence to support their claim for trespass to chattel."

As to appellants' claim for harmful access by computer, appellees explained that appellants had alleged in their petition that "MarOpCo accessed and took control of [appellants'] computer system stored at the [Tidwell] office[] with an intent to harm [appellants], in violation of the Texas Harmful Access by Computer Act ('THACA')." But appellees argued that they were entitled to judgment as a matter of law on appellants' claim because appellants could not prove that MarOpCo knowingly accessed the computer system without the effective consent of the owner as required by the THACA. Because MarOpCo was the owner of all property at the Tidwell office and all communications transmitted across its email domain, its access of the Rusk Capital server, which was storing without authorization all MarOpCo's data, was not knowingly. Further, MarOpCo had the effective consent of appellants to access its own data, and appellants had not proved that they were harmed. Appellees also asserted that appellants had "no evidence to support their claim" for harmful access by computer.

As to appellants' conspiracy claim, appellees noted that appellants had alleged in their petition that appellees had "engaged in a conspiracy to gain wrongful access to [appellants'] computer equipment, convert Preston's supposedly privileged information, violate [appellants'] privacy, limit Preston's

27

access to data, and wrongfully remove Preston from his positions at Trof and MarOpCo." Appellees argued that they were entitled to judgment as a matter of law on appellants' conspiracy claim because it was "based on other claims that fail[ed] as a matter of law," appellants had failed to prove that appellees were liable under an underlying tort theory, and appellants had failed to timely disclose any damages. Further, appellees asserted that appellants had "no evidence to support their conspiracy claim."

As to appellants' claims for declaratory relief, appellees explained that appellants had requested declarations[21] that were "not [the] proper subject matter for declaratory relief" as they did not "relate to rights under a written instrument, statute, ordinance, contract or franchise; an interest in a trust or estate; or sales and use taxes of another state." Further, even if the requested declarations were proper, appellees asserted that "Preston [was] not entitled to [any of the] data that was . . . located at the [Tidwell] office" as a matter of law and "no justiciable controversy exist[ed]."[22]

---

[21] These requests for declaratory relief were made in appellants' eighth amended petition—appellants' live pleading at the time appellees filed their summary-judgment motion. Appellants, in their eighth amended petition, sought declaratory relief as to the enforceability of the restrictive covenants found in the 2014 employment agreement, declarations relating to their "data-related claims," including a declaration that Preston was "entitled to permanent access to all data removed from the [Tidwell] office" as well as a declaration that Preston should be reinstated as an officer of Trof.

[22] Appellants filed a response to appellees' summary-judgment motion.

28

The trial court granted appellees summary judgment on appellants' claims for violation of privacy rights, misappropriation of trade secrets, conversion, trespass to chattel, harmful access by computer, conspiracy, and declaratory relief and dismissed those claims with prejudice.

Finally, Pierce Jr. moved for summary judgment on appellants' claim for breach of fiduciary duty against him, arguing that he was entitled to judgment as a matter of law because appellants "fail[ed] to specify any acts by which Pierce Jr. allegedly breached any duty and fail[ed] to identify any alleged damages resulting from any breach." Instead, appellants' petition only alleged that "Pierce [Jr.] owed Preston fiduciary duties" and "Pierce [Jr.] breached those duties." (Internal quotations omitted). Pierce Jr. further argued that he was entitled to judgment as a matter of law because he did not owe Preston a duty under Texas law as Preston was unable to establish a formal or informal fiduciary relationship. And to the extent that Preston relied on "a purported formal 'co-beneficiary' fiduciary relationship," that type of fiduciary relationship was not recognized under Texas law, and Pierce Jr. and Preston were not actually co-beneficiaries of a single trust.

Pierce Jr. also argued he was entitled to judgment as a matter of law on appellants' breach-of-fiduciary-duty claim because Preston could not "show that any conduct of Pierce Jr. caused any damage" to Preston and Preston had "never disclosed the amount [or] any method of calculating damages related to"

appellants' claim of breach of a co-beneficiary fiduciary relationship. (Internal quotations omitted.) Finally, Pierce Jr. asserted that Preston had no evidence of the existence of a fiduciary duty, causation, or damages as a result of any alleged breach.

The trial court granted Pierce Jr. summary judgment on appellants' claim for breach of fiduciary duty and dismissed that claim with prejudice.

### Bench Trial

After the bench trial, the trial court ordered that appellants "take nothing on their claims" against appellees in the suit. Further, the trial court rendered judgment in favor of MarOpCo on its counterclaims against appellants for breach of contract, breach of fiduciary duty, conversion, and trespass. The trial court ordered that MarOpCo was entitled to recover $446,397 from Preston, "as disgorgement of salary paid to Preston," $10 from Preston, "as nominal damages" for breach of the 2014 employment agreement, and $10 from Preston, "as nominal damages" for "trespass by Preston . . . on the property of MarOpCo." The trial court also ordered that MarOpCo was entitled to "a constructive trust over the [Rusk Capital] server and two workstations purchased by Rusk Capital," "the possession and return of all computer devices and equipment at issue in th[e] suit," "including the MarOpCo-owned laptop that Preston . . . used during his MarOpCo employment," and "the immediate return of all MarOpCo.com email files in

30

[appellants'] possession as well as all originals and copies of data, documents, materials, and information they received . . . in th[e] suit." As to attorney's fees, the trial court ordered Preston to pay MarOpCo $10,213,889 "in legal fees and litigation expenses for the proceedings in th[e] case up through the date of th[e] final judgment" as well as contingent appellate attorney's fees.

The trial court also issued findings of fact as follows:

1. MarOpCo . . . is an administrative services provider for a group of businesses, trusts, and foundations controlled primarily by Elaine[,] . . . who is the President and Sole Director of MarOpCo.

2. [Elaine] had the right to assign duties to MarOpCo employees.

3. MarOpCo's business includes providing administrative services for its affiliates, including, but not limited to, [Elaine], Ribosome . . . , Tanzanite Trading, LLC, Trof . . . , the EPM Testamentary Lead Trust, the E. Pierce Marshall estate, the EPM Marital Income Trust, the Harrier Trust, the Osprey Trust, and Telomere, LLC.

4. MarOpCo's business includes maintaining and managing files for various entities, including, but not limited to, the Marshall Heritage Foundation, the Marshall Legacy Foundation, the Eleanor Pierce Stevens Foundation, the EPS/EPM Charitable Remainder Unitrust, the Stevens Revocable Gift Trust, the Bettye Morgan Charitable Remainder Unitrust, the Peroxisome Charitable Lead Trust, Citrine Commerce LLC, Lysosome LLC, and Chondriosome Stiftung.

5. Preston . . . was an officer of MarOpCo from 2006 until his termination on June 11, 2015.

6. Rusk Capital . . . is a single member LLC formed and controlled by Preston . . . .

31

7.  Rusk Capital does not invest any funds of [Elaine] nor have any other connection with [Elaine].

8.  [Pierce Jr.] is Chief Legal Officer and Vice President of MarOpCo.

9.  The most recent written employment contract (the "[2014] [e]mployment [a]greement") between MarOpCo and Preston . . . was executed on December 12, 2014 for a term of one year.

10. Under the [2014] [e]mployment [a]greement, Preston . . . was a Vice President of MarOpCo and was to be paid $525,000 per year, plus benefits.

11. The [2014] [e]mployment [a]greement was terminable at will.

12. During Preston['s] . . . employment, the Houston office of MarOpCo was located at Suite 503 and later at Suite 800, 7600 West Tidwell, Houston, Texas 77040 ([the] "[Tidwell] [o]ffice").

13. Under the [2014] [e]mployment [a]greement, Preston . . . agreed to keep confidential and not disclose to any third party MarOpCo's non-public business information absent the express consent of MarOpCo's President.

14. The [2014] [e]mployment [a]greement required Preston . . . to devote his "full-time energies and talents exclusively to serving" as Vice President of MarOpCo, to "act at all times in the best interests" of MarOpCo, and to "perform the duties assigned" to him by MarOpCo's President, [Elaine], "faithfully, efficiently, and in a professional manner."

15. The [2014] [e]mployment [a]greement established ownership of data and documents by providing that documentation relating to the present or planned business of MarOpCo or any of its affiliates "shall remain the sole and exclusive property of [MarOpCo]."

16. The laptop that Preston . . . used while employed at MarOpCo was owned by MarOpCo.

17. MarOpCo's President specifically informed and instructed Preston . . . that he had no expectation of privacy related to MarOpCo.com emails or documents, data, or information stored on MarOpCo-owned computers.

18. Without the permission of MarOpCo's President, [Elaine], Preston . . . gave access to MarOpCo's [Tidwell] [o]ffice and MarOpCo's files and data to . . . Black, an employee of Rusk Capital.

19. The President of MarOpCo expressly prohibited the use of the [Tidwell] [o]ffice of MarOpCo for any other business that she did not own or control.

20. [Elaine] neither owned nor controlled Rusk Capital.

21. When Preston . . . did work at MarOpCo's [Tidwell] [o]ffice, he worked on other business interests owned by him, including for Rusk Capital.

22. While working for MarOpCo, Preston . . . transferred or caused to be transferred MarOpCo's confidential information to a new server that Preston . . . purchased through Rusk Capital without the knowledge or authorization of MarOpCo.

23. Preston . . . effected that transfer for the purpose of denying MarOpCo access to its own data.

24. Preston . . . improperly and extensively commingled MarOpCo's data and other property with what Preston . . . and Rusk Capital claimed to be their property.

25. . . . Black was given access to MarOpCo materials, information, data, and documents.

33

26.	On June 11, 2015, MarOpCo sent a termination letter to Preston . . . , signed by [Elaine].

. . . .

27.	After Preston['s] . . . termination, MarOpCo took precautions to secure the MarOpCo [Tidwell] [o]ffice and MarOpCo's documents, data, emails, information, and computer equipment and revoked Preston['s] . . . access to MarOpCo's [Tidwell] [o]ffice.

28.	On June 15, 2015, without authorization from MarOpCo, Preston . . . improperly gained access to MarOpCo's [Tidwell] [o]ffice.

29.	After his termination, Preston . . . improperly retained copies of MarOpCo.com emails.

30.	After Preston['s] . . . termination, MarOpCo returned to Preston . . . hard-copy personal documents and personal belongings.

31.	Preston . . . , individually, failed to present evidence concerning his claim of ownership of or entitlement to any specific or identifiable documents, data, emails, materials, or information.

32.	After his termination and without MarOpCo's authorization, Preston . . . improperly accessed MarOpCo's email system.

33.	The MarOpCo-owned laptop that Preston . . . used while he was employed by MarOpCo included emails transmitted on Preston['s] . . . MarOpCo.com email account between Preston . . . and his attorney, Kenneth Michael Wright ("Mr. Wright").

34.	The emails were all found on Preston['s] . . . MarOpCo-owned laptop.

35.	Preston . . . presented no evidence that he ever personally paid attorney fees of the law firm Lundy, Lundy, Soileau & South[,]

34

LLP related to any opposition of the motion to recuse in the Stevens Case.

36. Preston . . . waived any privilege he may have had by transmitting emails to and from his lawyer on a MarOpCo.com email account.

## Claims of Data Ownership, Including Conversion, Trespass, and Harmful Access by Computer

37. Neither [Elaine] nor Pierce [Jr.] . . . ever agreed to a joint legal representation with Preston . . . by any lawyer or law firm, including . . . Hunter . . . and Hunter, Hunter & Sonnier, LLC (the "Hunter Firm").

38. Preston . . . and Pierce [Jr.] . . . ha[d] been adverse in legal proceedings since 2013.

39. Preston . . . , individually, ha[d] not been represented by the Hunter Firm.

40. The copies of Marshall Family Meeting minutes and the binders for those Meetings located at MarOpCo's [Tidwell] [o]ffice, which were managed and maintained by MarOpCo employees, and the audio recordings of such Meetings are the property of MarOpCo.

## Breach of [2014] Employment Agreement

41. MarOpCo did not fail to comply with the [2014] [e]mployment [a]greement.

42. MarOpCo had the right to terminate the [2014] [e]mployment [a]greement at will.

43. Preston . . . failed to comply with the [2014] [e]mployment [a]greement.

44. The failure to comply with the [2014] [e]mployment [a]greement by Preston . . . was not excused.

**Conversion**

45. Preston . . . had no reasonable expectation of privacy in any documents, emails, materials, information, or data that he placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

46. Rusk Capital had no reasonable expectation of privacy in any documents, emails, materials, information, or data that it placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

47. Preston . . . , individually, ha[d] no ownership or other interest in any documents, emails, materials, information, or data that he placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

48. Rusk Capital ha[d] no ownership or other interest in documents, emails, material, data, or information that Preston . . . placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

49. Preston . . . and Rusk Capital acted inconsistently with their alleged claims of ownership over the server and computer equipment when the equipment was used for MarOpCo business and when they placed, or caused to be placed, MarOpCo documents, emails, material, data, or information onto the computer equipment and server.

50. MarOpCo did not wrongfully exercise dominion or control over any alleged property of Preston . . . . MarOpCo did not unlawfully access any alleged property of Preston . . . .

51. MarOpCo did not wrongfully exercise dominion or control over any alleged property of Rusk Capital. MarOpCo did not unlawfully access any alleged property of Rusk Capital.

36

52. Preston . . . and Rusk Capital wrongfully exercised dominion or control over MarOpCo's property. Preston . . . and Rusk Capital unlawfully accessed MarOpCo's property.

53. Preston . . . and Rusk Capital intended to use data and information belonging to MarOpCo in a manner that was inconsistent with MarOpCo's rights. *See Cuidado Casero Home Health of El Paso v. Ayuda Home Health Care Servs.*, 404 S.W.3d 737, 749 (Tex. App.—El Paso 2013, no pet.); *Westlake Surgical v. Turner*, [No. 03-08-00122-CV,] 2009 WL 2410276[,] at *3 (Tex. App.—Austin 2009, no pet.) [(mem. op.)].

54. Preston . . . and Rusk Capital exercised dominion and control over MarOpCo's property without MarOpCo's consent to the exclusion of its right of use and possession.

**Trespass to Chattel**

55. MarOpCo did not wrongfully interfere with Preston['s] . . . use or possession of property.

56. MarOpCo did not wrongfully interfere with Rusk Capital's use or possession of property.

57. Preston . . . and Rusk Capital acted inconsistently with their alleged claims of ownership over the server and computer equipment when the equipment was used for MarOpCo business and when they placed, or caused to be placed, MarOpCo documents, emails, material, data, or information onto the computer equipment and server.

**Trespass to Real Property**

58. Preston . . . entered the property of MarOpCo—namely, 7600 West Tidwell Road, Suite 800, Houston, TX 77040—without MarOpCo's consent or authorization.

## Violation of Harmful Access by Computer Act

59.    MarOpCo did not knowingly access a computer, computer network, or computer system without the effective consent of Preston . . . .

60.    MarOpCo did not knowingly access a computer, computer network, or computer system without the effective consent of Rusk Capital.

61.    Preston . . . knowingly and intentionally accessed a computer, computer network, or computer system without the effective consent of its owner MarOpCo.

62.    Preston . . . knowingly and intentionally accessed, imaged, and moved MarOpCo's databases without MarOpCo's consent.

63.    Preston . . . knowingly and intentionally copied MarOpCo's emails and data and allowed a third party access to the data.

## Breach of Fiduciary Duty

64.    A relationship of trust and confidence existed between MarOpCo and Preston . . . .

65.    During his employment at MarOpCo, Preston . . . served as an officer of MarOpCo.

66.    MarOpCo justifiably placed trust and confidence in Preston . . . to act in MarOpCo's best interest.

67.    MarOpCo's trust and confidence in Preston . . . was not based merely on subjective trust and feelings alone.

68.    Preston . . . failed to comply with the following duties that he owed to MarOpCo:

- Preston . . . made unreasonable use of the confidence that MarOpCo placed in him.

- Preston . . . failed to act in the utmost good faith and to exercise the most scrupulous honesty toward MarOpCo.

- Preston . . . placed his own interests before the interests of MarOpCo.

- Preston . . . used the advantage of his position to gain benefit for himself at the expense of MarOpCo.

69. Preston . . . breached his fiduciary duties owed to MarOpCo.

70. From the time of the commencement of Preston['s] . . . breaches of fiduciary duty on July 16, 2014 when Preston . . . migrated MarOpCo's data to the Rusk Capital server, his net salary from MarOpCo amounted to $446,397.

The trial court also issued the following conclusions of law:

1. Preston . . . presented no legally sufficient evidence in support of any claim to ownership or entitlement to any documents, data, materials, emails, or information not returned to him by MarOpCo.

2. Preston . . . , individually, was never represented by any lawyer or law firm jointly with either [Elaine] or Pierce [Jr.] . . . .

3. Preston . . . , individually, was never a client of . . . Hunter or the Hunter Firm.

4. Preston . . . , individually, presented no legally sufficient evidence of any claimed joint client or joint privilege relationship.

5. The Marshall Family Meetings concerned the business of MarOpCo and its affiliates, including [Elaine].

6. Preston . . . [was] not entitled to recover on his claim for breach of the [2014] [e]mployment [a]greement.

7. MarOpCo suffered a legal injury because of Preston['s] . . . failure to comply with the [2014] [e]mployment [a]greement.

8. To remedy Preston['s] . . . breach of contract, MarOpCo [was] entitled to a prompt return by Preston . . . of all MarOpCo.com emails in his possession and any documents, information, materials, or data that Preston . . . received from CyberEvidence in this suit.

9. MarOpCo [was] entitled to recover nominal damages in the amount of $10.00 for Preston['s] . . . breach of the [2014] [e]mployment [a]greement.

10. The binders and/or copies of the Marshall Family Meeting minutes, and the audio recordings of such Meetings, [were] the sole and exclusive property of MarOpCo.

11. Preston . . . presented legally insufficient evidence that MarOpCo ha[d] failed to return to him any documents, data, emails, material, or information—whether in storage units or in binders, related to Marshall Family Meetings, or otherwise— that Preston . . . , individually, [was] entitled to receive based on any valid claim of ownership.

12. Preston . . . [was] not entitled to recover on his claim for breach of the [2014] [e]mployment [a]greement.

13. MarOpCo did not convert any property of Preston . . . .

14. MarOpCo did not convert any property of Rusk Capital.

15. Preston . . . and Rusk Capital [were] not entitled to recover on their claims for conversion.

16. Preston . . . and Rusk Capital converted MarOpCo's property.

17. MarOpCo suffered a legal injury from Preston['s] . . . and Rusk Capital's conversion of MarOpCo's property.

18. MarOpCo [was] entitled to recover its data, documents, emails, materials, and information from Preston . . . and from Rusk Capital's server and workstations.

19. Preston . . . and Rusk Capital [were] not entitled to recover on their claims of trespass to chattel against MarOpCo.

20. Preston . . . trespassed on the real property of MarOpCo, namely the [Tidwell] office located at 7600 West Tidwell Road, Suite 800, Houston, TX 77040.

21. MarOpCo suffered a legal injury from Preston['s] . . . trespass on the property.

22. Trespass does not require damages. "Every unauthorized entry upon land of another is a trespass even if no damage is done." *Coinmach Corp. v. Aspenwood Apts. Corp.*, 417 S.W.3d 909, 920 (Tex. 2013).

23. MarOpCo [was] entitled to recover nominal damages in the amount of $10.00 from Preston . . . on its claim for trespass.

24. MarOpCo did not present legally sufficient evidence to show that it suffered damages from Preston['s] . . . accessing of a computer, computer network, or computer system without the effective consent of its owner MarOpCo.

25. MarOpCo [was] not entitled to recover against Preston . . . on its claim of violations of the [THACA].

26. Preston . . . and Rusk Capital [were] not entitled to recover against MarOpCo on their claim of violations of the [THACA].

27. Preston . . . [was] not entitled to a declaratory judgment.

28. Preston . . . , individually, [was] not entitled to have nor retain the hard copies of the Marshall Family Meeting PowerPoints.

41

29. Preston . . . , individually, and Rusk Capital [were] not entitled to retain nor have access to MarOpCo.com emails and MarOpCo data and information.

30. Neither Preston . . . nor Rusk Capital [was] entitled to injunctive relief because they d[id] not have any ownership or right to possess or access to any documents, data, property, or information at MarOpCo's [Tidwell] [o]ffice or transmitted to or from a MarOpCo.com email address.

31. MarOpCo [was] entitled to a constructive trust over the server and workstations of Rusk Capital and all data thereon that [was] in the possession of CyberEvidence.

32. MarOpCo [was] entitled to a return of the data and all copies thereof that Preston . . . received from CyberEvidence in this suit.

33. MarOpCo [was] entitled to a return of all MarOpCo-owned computer equipment, and all data stored on such computer equipment, which [was] in the possession of CyberEvidence.

34. MarOpCo [was] entitled to a disgorgement of net salary paid to Preston . . . after the commencement of his breaches of fiduciary duty in the amount of $446,397.

35. Under paragraph 20 of the [2014] [e]mployment [a]greement, MarOpCo [was] entitled to recover the legal fees and litigation costs and expenses of litigation that it incurred with respect to the following claims brought by Preston . . . , as to which the Court granted a summary judgment: (1) wrongful termination; (2) all fraud-based claims; (3) tortious interference with business and fiduciary duties; (4) conspiracy; (5) violation of privacy rights; (6) misappropriation of trade secrets; (7) restrictive covenants in the [2014] [e]mployment [a]greement; and (8) reinstatement of Preston . . . as an officer of Trof . . . .

36. Under paragraph 20 of the [2014] [e]mployment [a]greement, MarOpCo [was] entitled to recover legal fees and expenses as

the prevailing party on all claims tried to the [c]ourt, all of which were "for the enforcement or interpretation of any of the terms or conditions" of the [2014] [e]mployment [a]greement, "or because of an alleged dispute, breach, or default in connection with any of the provisions" of the [2014] [e]mployment [a]greement.

37. Preston . . . and Rusk Capital [were] not entitled to recover attorneys' fees.

38. Preston . . . and Rusk Capital ha[d] failed to present legally sufficient evidence on their affirmative defenses.

## Summary Judgment

In their fifth, sixth, seventh, eighth, ninth, and tenth issues, appellants argue that the trial court erred in granting summary judgment on appellants' "fraud-based claims," wrongful-termination claim, "privacy claims," conversion, trespass-to-chattel, and harmful-access-by-computer claims, breach-of-fiduciary duty claim, and claims for declaratory relief because "genuine disputes of material fact preclude[d] summary judgment."

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movants, and we indulge every reasonable inference and resolve any doubts in the non-movants' favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold

43

the trial court's judgment if any of the asserted grounds are meritorious.  *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a no-evidence summary-judgment motion, the movants must establish that there is no evidence to support an essential element of the non-movants' claim on which the non-movants would have the burden of proof at trial.  *See* TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  The burden then shifts to the non-movants to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion.  *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524.  A no-evidence summary-judgment may not be granted if the non-movants bring forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements in the motion.  *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted).  The trial court must grant a no-evidence summary-judgment motion if the movants assert that there is no evidence of one or more specified elements of

44

the non-movants' claim on which the non-movants would have the burden of proof at trial and the non-movants fail to file a timely response or fails to produce summary-judgment evidence raising a genuine issue of material fact on each challenged element. *See* TEX. R. CIV. P. 166a(i); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

To prevail on a matter-of-law summary-judgment motion, the movants must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When the defendants move for a matter-of-law summary judgment, they must either: (1) disprove at least one essential element of the plaintiffs' truscause of action or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiffs' cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movants meet their burden, the burden shifts to the non-movants to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcont'l. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded fact finders could differ in their conclusions in light of all the summary-judgment

evidence.  *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

## A.    Fraud-Based Claims

In their fifth issue, appellants argue that the trial court erred in granting summary judgment in favor of appellees on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction, and tortious interference with existing contracts because appellants "raised a genuine dispute of material fact [as to] whether [Elaine] (as President of MarOpCo) and Pierce Jr. induced [Preston] to enter the 2014 [e]mployment [a]greement with the false promise of disclaimed Trof shares."

In its orders granting appellees summary judgment on appellants' fraud-based claims, the trial court did not specify the grounds upon which it relied. When, as here, the trial court's orders granting summary judgment do not specify the grounds relied upon, we must affirm the trial court's ruling if any of the summary-judgment grounds are meritorious.  *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000).  Further, on appeal, appellants must attack all independent bases or grounds that fully support the complained-of order or judgment.  *See Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423–24 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  If an independent ground

fully supports the complained-of order or judgment, but the appellants assign no error to that independent ground, an appellate court must accept the validity of the unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681.

In their summary-judgment motion, appellees asserted that they were entitled to judgment as a matter of law on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, and fraud in a stock transaction for many reasons. In their opening brief, appellants address several arguments raised by appellees in their summary-judgment motion: (1) the 2014 employment agreement contained a waiver-of-reliance provision to which Preston agreed; (2) Elaine's alleged promise of Trof shares was unenforceable; (3) Preston was not entitled to damages for the value of the Trof shares; and (4) the 2014 employment agreement was not a transaction for the sale of stock. But appellants failed to address appellees' argument that they were entitled to judgment as a matter of law on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, fraud in a stock transaction and because Preston could not "show that [any of] his alleged reliance was justified."

Justifiable reliance is an element of a fraud claim. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). And to establish justifiable reliance, plaintiffs must show that they actually relied on the defendants' false representations and that their reliance was justified. *Id.* In certain circumstances, a court may determine as a matter of law that reliance was not justifiable. *Id.* at 654. In making such a determination, the court views the entirety of the circumstances "while accounting for the parties' relative levels of sophistication." *Id.* at 656. A party may not justifiably rely on an oral representation that is directly contradicted by a written contract. *Id.* at 658.

Here, the trial court could have determined that appellees were entitled to summary judgment on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, and fraud in a stock transaction because appellees established as a matter of law that appellants' reliance on Elaine's, MarOpCo's, or Pierce Jr.'s purported false representations was not justifiable. This conclusion supports the trial court's decision granting appellees summary judgment on appellant's claims for fraud, fraudulent inducement, fraudulent concealment, and fraud in a stock transaction. Because appellants, on appeal, did not challenge this independent ground supporting the trial court's summary-judgment ruling, we hold that the trial court did not err in granting appellees' summary judgment on appellants' claims for fraud, fraudulent inducement, fraudulent concealment, and

48

fraud in a stock transaction. *See Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("If the appellant fails to challenge all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment."); *Britton*, 95 S.W.3d at 681–82 ("If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." (internal quotations omitted)).

As to appellants' claim for tortious interference with existing contracts, appellants, in their briefing, argue that the trial court erred in granting Pierce Jr. summary judgment on that claim because Pierce Jr. "did not argue, much less prove as a matter of law, that he was acting as MarOpCo's agent when Preston entered into the 2014 [e]mployment [a]greement." (Emphasis omitted.)

To prevail on a claim for tortious interference with a contract, plaintiffs must establish: (1) the existence a contract subject to interference; (2) willful and intentional interference; (3) the willful and intentional interference caused damage; and (4) actual damage or loss occurred. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 588 (Tex. 2017).

In their eleventh amended petition, appellants alleged that Pierce Jr. caused MarOpCo to terminate the 2010 employment agreement "in favor of the 2014 [e]mployment [a]greement [which] . . . greatly reduced [Preston's] base salary,"

and Pierce Jr. "caused MarOpCo to breach the 2014 [e]mployment [a]greement with Preston." But after the bench trial, the trial court found that MarOpCo did not breach the 2014 employment agreement. Thus, even assuming that the trial court erred in granting summary judgment in favor of Pierce Jr., the error is harmless considering the trial court's subsequent findings negating an essential element of appellants' claim—that the purported interference caused damage to Preston's contractual relationship with MarOpCo. *See Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921–22 (Tex. 2005); *see also Serafine v. Blunt*, No. 03-16-001301-CV, 2017 WL 2224528, at *5 (Tex. App.—Austin May 19, 2017, pet. denied) (mem. op.) (concluding "the question of whether the trial court erred in granting summary judgment [was] irrelevant because, even assuming that the trial court erred in granting summary judgment for [defendant], the error [was] harmless in light of the jury's subsequent findings negating [an] essential element of [plaintiff's] claim"); *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 224 S.W.3d 369, 389 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The Texas Supreme Court has recently determined . . . that we may consider the trier of fact's later findings in a breach of contract case in determining the propriety of the trial court's earlier grant of summary judgment on related bad-faith and extra-contractual claims."). Thus, we hold that any purported error by the trial court in granting Pierce Jr. summary judgment on appellants'

50

tortious-interference-with-existing-contracts claim was rendered harmless following the bench trial in this case.

We overrule appellants' fifth issue.

## B.      Wrongful-Termination Claim

In their sixth issue, appellants argue that the trial court erred in granting MarOpCo summary judgment on Preston's wrongful-termination claim because appellants "raised a genuine dispute of material fact [as to] whether [Elaine] (as President of MarOpCo) terminated Preston's employment due to his refusal to perform an illegal act."

The general rule in Texas is that an employee may be terminated at will and without cause. *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). However, in *Sabine Pilot Service, Inc. v. Hauck*, the Texas Supreme Court created a narrow exception to the at-will employment doctrine, providing that an employee can maintain an action for wrongful termination when he was fired solely for refusing to commit an unlawful act carrying criminal penalties. 687 S.W.2d 733, 735 (Tex. 1985). The focus of the inquiry in determining whether an employee was fired for refusing to engage in a criminal act is whether the act, if performed, would have subjected the employee to criminal penalties. *See The Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 332–33 (Tex. 2006).

To establish a cause of action for wrongful termination for refusal to perform an illegal act, an employee must establish: (1) he was an at-will employee; (2) he refused to perform an illegal act; and (3) his employment was terminated solely because he refused to perform the illegal act. *See Sabine Pilot*, 687 S.W.2d at 735; *Green v. Quality Dialysis One, LP*, No. 14-05-01247-CV, 2007 WL 2239295, at *5 (Tex. App.—Houston [14th Dist.] Aug. 7, 2007, no pet.) (mem. op.). The employee has the burden of proving by a preponderance of the evidence that his discharge was for no reason other than the refusal to commit an illegal act—in other words, the refusal was the sole cause of his discharge. *Peine v. HIT Servs. L.P.*, 479 S.W.3d 445, 449–50 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). If an employer discharges the employee both for refusing to perform an illegal act and for a legitimate reason, the employer cannot be liable for wrongful termination. *See Tex. Dep't of Human Servs. of State of Tex. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995); *Peine*, 479 S.W.3d at 449–50.

In their eleventh amended petition, appellants brought a claim for wrongful termination, alleging that Preston, an at-will employee of MarOpCo, was terminated solely because he refused to commit illegal acts—a felony under Texas Penal Code section 32.45, which would require Preston to "commit a misapplication of fiduciary property" and a felony under Texas Penal Code section 37.03, which would require Preston to "make a false statement under oath in

connection with an official proceeding." MarOpCo, in its summary-judgment motion, asserted, however, that it did not terminate Preston's employment because he refused to commit an "illegal act." (Internal quotations omitted.) Rather, Preston's employment was terminated for a host of reasons, including, but not limited to, because Preston "disobeyed express instructions by using [the Tidwell] office for his businesses that were not owned or controlled by [Elaine]," including Rusk Capital, and Preston allowed Black, an employee of Rusk Capital, "to work out of [the Tidwell] office." MarOpCo attached evidence to its summary-judgment motion to support its assertion.

An employer can obtain summary judgment on a claim for wrongful termination for refusal to perform an illegal act by proving, as a matter of law, at least one legitimate reason for terminating the employee's employment. *Peine*, 479 S.W.3d at 450; *see also Hinds*, 904 S.W.2d at 633. Here, MarOpCo's summary-judgment evidence conclusively established that one reason for terminating Preston's employment was Preston's operation of Rusk Capital out of the Tidwell office and the fact that Preston allowed Black, a Rusk Capital employee, to use the Tidwell office to work for a company other than MarOpCo.[23]

---

[23] In their eleventh amended petition, appellants admitted that Preston created Rusk Capital while he was employed by MarOpCo and that Rusk Capital maintained its principal office at the Tidwell office. Appellants also admitted that Preston purchased, used, and/or relied on computers, computer servers, and other property

*See Peine*, 479 S.W.3d at 450 (holding trial court properly granted summary judgment on wrongful-termination claim where employer established other reason for terminating employee's employment, thereby negating essential element that sole reason for termination was refusal to perform illegal act); *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("An employer who discharges an employee for both refusing to perform an illegal act and for a legitimate reason cannot be held liable for wrongful discharge—the refusal must be the sole cause for the employee's termination."); *see also Robinson v. The Devereux Found.*, No. 14-01-00081-CV, 2002 WL 1315631, at *2–3 (Tex. App.—Houston [14th Dist.] June 6, 2002, pet. denied) (not designated for publication) (holding "summary judgment evidence conclusively negate[d] the essential element of [employee's] wrongful termination claim that the sole reason for termination was a failure to commit an illegal act"). Accordingly, we hold that the trial court did not err in granting summary judgment on appellants' claim for wrongful termination.

We overrule appellants' sixth issue.

C. **Privacy Claims**

In their seventh issue, appellants argue that the trial court erred in granting appellees summary judgment on their claims for violation of privacy rights,

maintained at the Tidwell office for purposes of conducting Rusk Capital's business.

54

conspiracy, and misappropriation of trade secrets because appellants "raised a genuine dispute of material fact [as to] whether [appellees] violated [appellants'] privacy rights."

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Barham v. Turner Constr. Co. of Tex.*, 803 S.W.2d 731, 740 (Tex. App.—Dallas 1990, writ denied) (appellant bears burden of discussing his assertions of error). The failure to provide substantive analysis of an issue or cite appropriate authority or the record waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *see also Irisson v. Lone Star Nat'l Bank*, No. 13-19-00239-CV, 2020 WL 6343336, at *2–3 (Tex. App.—Corpus Christi–Edinburg Oct. 29, 2020, no pet.) (mem. op.) ("When an appellant's brief fails to contain clear and concise argument for the contentions made with appropriate citations to authorities, the appellate court is not responsible for doing the legal research that might support a party's contentions.").

As to the propriety of the summary judgment granted in favor of appellees on appellants' claims for violation of privacy rights, appellants' opening brief contains conclusory paragraphs devoid of citations to the record and appropriate legal authorities. *Cf.* TEX. R. APP. P. 38.1(i). Instead, appellants merely restate appellees' summary-judgment arguments in the trial court and then summarily conclude that the trial court "erred if it granted summary judgment based on [appellees'] argument[s]." For instance, in their briefing, appellants state, in two sentences:

> First, MarOpCo and Pierce Jr. argued the [trial] [c]ourt should grant summary judgment on [appellants'] claims for public disclosure of private facts and intrusion upon seclusion because Preston had no expectation of privacy in privileged communications he sent using MarOpCo equipment and a MarOpCo email. . . . The [trial] [c]ourt erred if it granted summary judgment based on this argument because it raises numerous disputes of material fact, including whether Preston should have expected his privileged communications to be subject to review by Pierce Jr., Hunter, and MarOpCo.

(Emphasis omitted.) This is not sufficient to challenge appellees' argument in their summary-judgment motion that they were entitled to summary judgment as a matter of law on appellants' claims for violation of privacy rights, including their claim for public disclosure of private information and "intrusion upon seclusion," because "there exist[ed] no expectation of privacy as a matter of law for an employee communicating using his employer's email and other systems." *See* TEX. R. APP. P. 38.1(i); *Cruz v. Sears, Roebuck & Co.*, No. 05-15-00737-CV, 2016

WL 4119771, at *3 (Tex. App.—Dallas July 29, 2016, no pet.) (mem. op.) ("If an appellant presents an issue generally asserting the summary judgment evidence raised fact issues, that issue must also include argument and authority explaining how the evidence defeated each ground for summary judgment."); *Prasad v. Cap. Farm Credit, FLCA*, No. 01-12-00585-CV, 2013 WL 3877666, at *3 (Tex. App.— Houston [1st Dist.] July 25, 2013, no pet.) (mem. op.) (appellant, whose brief provided "no substantive discussion of the issue he raise[d] or citation to any summary judgment proof to support [his] contention that [appellee] did not establish its right to summary judgment as a matter of law," waived challenge on appeal); *see also Littles v. Riverwalk Council of Co-Owners, Inc.*, No. 01-16-00790-CV, 2018 WL 4781142, at *4 (Tex. App.—Houston [1st Dist.] Oct. 4, 2018, no pet.) (mem. op.) (appellant waived challenge to summary judgment ground on appeal where she did not "present[] a cogent argument with a discussion of the relevant facts and authorities relied upon related to her complaint that 'multiple fact[] issues abound in th[e] case'" (second alteration in original)). Accordingly, we conclude that appellants have inadequately briefed their challenge to this ground on which the trial court's summary judgment on appellants' violation-of-privacy-rights claims could have been based. As such, we hold that the trial court did not err in granting appellees summary judgment on appellants' claims for violation of privacy rights. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d

471, 473 (Tex. 1995) (non-movant required to show each ground alleged in summary-judgment motion insufficient to support summary judgment).

As to the propriety of the summary judgment granted in favor of appellees on appellants' claim for misappropriation of trade secrets, appellants have the same briefing problem. In their opening brief, appellants merely restate appellees' summary-judgment argument in the trial court and then summarily conclude that the trial court "erred if it granted summary judgment based on [appellees'] arguments." Specifically, appellants state:

> . . . MarOpCo argued the [trial] [c]ourt should grant summary judgment on [appellants'] claim for misappropriation of trade secrets because they cannot prove (1) they possessed trade secrets, (2) MarOpCo misappropriated those trade secrets, or (3) they suffered injury. The [trial] [c]ourt erred if it granted summary judgment based on these arguments because they implicate genuine disputes of material fact, including: (1) whether [appellants'] "information related to actual and potential investors, dates pertaining to investment opportunities, business strategies, investment strategies, . . . communications with actual and potential investors, data evidencing due diligence with respect to investment opportunities, and employee records" qualify as trade secrets, . . . (2) whether MarOpCo acquired [appellants'] trade secrets by improper means when it seized them from Preston's laptop, . . . and (3) whether [appellants] suffered damages, including the fees they incurred seeking the trade secrets' return.

(Emphasis omitted.) Absent from appellants' briefing is appropriate argument, analysis, discussion, and citations to the record and appropriate legal authorities. *See* TEX. R. APP. P. 38.1(i); *Richardson v. Marsack*, No. 05-18-00087-CV, 2018 WL 4474762, at *1 (Tex. App.—Dallas Sept. 19, 2018, no pet.) (mem. op.) ("Our

58

appellate rules have specific requirements for briefing," including requiring "appellants to state concisely their complaints, to provide succinct, clear, and accurate arguments for why their complaints have merit in law and fact, to cite legal authority that is applicable to their complaints, and to cite appropriate references in the record."); *Huey*, 200 S.W.3d at 854 ("We have no duty to brief appellant's issue for her. Failure to cite to applicable authority or provide substantive analysis waives an issue on appeal."). Appellants' conclusory briefing is not sufficient to challenge appellees' arguments in their summary-judgment motion that they were entitled to summary judgment as a matter of law on appellants' claim for misappropriation of trade secrets because appellants could not (1) "identify any trade secrets with specificity," (2) "prove their ownership of any such 'trade secret,'" (3) any trade secrets developed by Preston during his employment with MarOpCo were the property of MarOpCo, (4) appellants had "disclosed [any purported] trade secrets to MarOpCo," (5) and appellants could not identify any injury. *See* TEX. R. APP. P. 38.1(i); *Cruz*, 2016 WL 4119771, at *3; *Prasad*, 2013 WL 3877666, at *3; *see also Littles*, 2018 WL 4781142, at *4. Thus, we conclude that appellants have inadequately briefed their challenge to the grounds on which the trial court's summary judgment on appellants' misappropriation-of-trade-secrets claim could have been based. As such, we hold that the trial court did not err in granting appellees summary judgment on

appellants' claim for misappropriation of trade secrets. *See Doe*, 915 S.W.2d at 473 (nonmovant required to show each ground alleged in summary-judgment motion insufficient to support summary judgment).

Finally, as to the propriety of the summary judgment granted in favor of appellees on appellants' claim for conspiracy, appellants' opening brief includes only four sentences. *Cf.* TEX. R. APP. P. 38.1(i). Again, appellants merely restate appellees' summary-judgment argument in the trial court and then summarily conclude that the trial court "erred if it granted summary just based on [appellees'] arguments." This is not sufficient to challenge appellees' arguments in their summary-judgment motion that they were entitled to summary judgment as a matter of law on appellants' claim for conspiracy because it was "based on other claims that fail[ed] as a matter of law," appellants had failed to prove that appellees were liable under an underlying tort theory, and appellants' had failed to timely disclose any damages. *See id.*; *Cruz*, 2016 WL 4119771, at *3; *Prasad*, 2013 WL 3877666, at *3; *see also Littles*, 2018 WL 4781142, at *4. Thus, we conclude that appellants have inadequately briefed their challenge to the grounds on which the trial court's summary judgment on appellants' conspiracy claim could have been based. We hold that the trial court did not err in granting appellees summary judgment on appellants' claim for misappropriation of trade secrets. *See Doe*, 915

S.W.2d at 473 (nonmovant required to show each ground alleged in summary-judgment motion insufficient to support summary judgment).

We overrule appellants' seventh issue.

## D. Conversion, Trespass-to-Chattel, and Harmful-Access-by-Computer Claims

In their ninth issue, appellants argue that the trial court erred in granting Pierce Jr. summary judgment on appellants' claims for conversion, trespass to chattel, and harmful access by computer because Preston "raised a genuine dispute of material fact [as to] whether Pierce Jr. stole his and Rusk[] [Capital's] property" after termination of Preston's employment with MarOpCo.

In the trial court, Pierce Jr. moved for summary judgment on appellants' claims for conversion, trespass to chattel, and harmful access by computer on several grounds, including arguing that he was entitled to judgment as a matter of law on appellants' claims because the attorney-immunity doctrine barred the claims against him.[24]

---

[24] As to appellants' conversion claim against him, Pierce Jr. also argued, in his summary-judgment motion, that he was entitled to judgment as a matter of law on appellants' claim because there existed "no genuine issue that Preston d[id] not own, possess or have any right to immediate possession of any property from the [Tidwell] office." Preston was "already on notice that 'all information, documents, or emails stored on a MarOpCo owned computer, the MarOpCo server, or through a MarOpCo.com email address [were] explicitly the property of [MarOpCo]'" and appellants should have had "'no expectation of privacy for said documents or emails.'" Further, the 2014 employment agreement made clear that MarOpCo owned everything that Preston created during his employment. And MarOpCo "lawfully and with authorization accessed [appellants'] alleged

61

As previously explained, appellants must attack all independent bases or grounds that fully support the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681. If an independent ground fully supports the complained-of order or judgment, but the appellants assign no error to that independent ground, an appellate court must accept the validity of the unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of order or judgment. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681. An appellate court must affirm the complained-of order or judgment when an appellant challenges some but not all bases for the order or judgment. *See Miller v. Debo Homes, LLC*, No. 14-15-00004-CV, 2016 WL

property" and appellants had failed to disclose any damages for conversion. Additionally, as to appellants' trespass-to-chattel claim against him, Pierce Jr. also argued that he was entitled to judgment as a matter of law on the claim because MarOpCo owned all property at the Tidwell office and all data, information, and communications transmitted across its email domain and systems, appellants had no expectation of privacy in their alleged property stored at the Tidwell office without authorization, and appellants had failed to disclose any damages. And, as to appellants' claim for harmful access by computer, Pierce Jr. argued that he was entitled to judgment as a matter of law on appellants' claim because appellants could not prove that MarOpCo knowingly accessed the computer system without the effective consent of the owner as required by the THACA. Because MarOpCo was the owner of all property at the Tidwell office and all communications transmitted across its email domain, its access of the Rusk Capital server, which was storing without authorization all MarOpCo's data, was not knowing. Further, MarOpCo had the effective consent of appellants to access its own data and appellants had not proved that they were harmed.

5399507, at *3 (Tex. App.—Houston [14th Dist.] Sept. 27, 2016, pet. denied) (mem. op.).

In its opening brief, appellants, in two conclusory paragraphs, state that Preston, in response to Pierce Jr.'s summary-judgment motion, "raised a genuine dispute of material fact [as to] whether Pierce Jr. stole his and Rusk[] [Capital's] property after his termination" of employment. According to appellants, Pierce Jr.'s "principal argument" in his summary-judgment motion was that "Preston did not suffer any damages." But appellants, in their briefing, do not address Pierce Jr.'s attorney-immunity argument contained in his summary-judgment motion.[25] "When an appellant fails to challenge an alternate basis for the appealed order, any error in the challenged basis for the order is rendered harmless." *In re A.K.P.*, No. 06-19-00075-CV, 2020 WL 465281, at *2 (Tex. App.—Texarkana Jan. 29, 2020, no pet.) (mem. op.) (internal quotations omitted). As such, we hold that the trial court did not err in granting Pierce Jr. summary judgment on appellants' conversion, trespass-to-chattel, and harmful-access-by-a-computer claims. *See Heritage Gulf Coast Props.*, 416 S.W.3d at 653 ("If the appellant fails to challenge

---

[25] In a single sentence, contained in a footnote, appellants state: "The attorney immunity doctrine does not protect Pierce Jr.'s use of Preston's personal and privileged communications for Pierce Jr.'s benefit in a lawsuit that had nothing to do with MarOpCo." This is not sufficient to be considered adequate briefing on Pierce Jr.'s attorney-immunity argument raised in his summary-judgment motion on appellants' conversion, trespass-to-chattel, and harmful-access-by-a-computer claims. *See* TEX. R. APP. P. 38.1(i).

all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment.").

We overrule appellants' ninth issue.

## E.    Breach-of-Fiduciary-Duty Claim

In their tenth issue, appellants argue that the trial court erred in granting Pierce Jr. summary judgment on appellants' claim for breach of fiduciary duty because Preston "raised a genuine dispute of material fact [as to] whether Pierce Jr. breached his fiduciary duties to Preston as his co-beneficiary by failing to disclose the Wyoming Transactions."[26]

---

[26]    Appellants' opening brief identifies the "Wyoming Transactions," as follows:

> MarOpCo managed the assets of the Marital Income Trust . . . , which was created in Pierce Sr.'s 2006 [w]ill and which inherited the majority of his multibillion-dollar estate. The [Marital Income Trust] pays the income to [Elaine] until her death and then sends half the principal to the Harrier Trust and the other half to the Osprey Trust. Preston is the sole beneficiary of the Harrier Trust, and Pierce Jr. is the sole beneficiary of the Osprey Trust. [Pierce Sr.'s will] name[d] [Elaine] as trustee and Preston as successor trustee of the [Marital Income Trust]. Pierce Jr. may never be trustee of the [Marital Income Trust] because [Pierce Sr.'s will] provide[d] that in the event Preston d[id] not serve as successor trustee, the trustee must be "an independent person or persons."

> In 2014, without telling Preston, [Elaine] began a series of transactions to move the [Marital Income Trust] to Wyoming. . . .

> Pierce Jr. was intimately involved in these transactions by which he supplanted Preston as successor trustee. . . .

> [Pierce Jr.] knew by July 2014 that [Elaine] was transferring the [Martial Income Trust] to Wyoming. . . . [B]ut [he] never disclosed them to his co-beneficiary Preston.

64

As to the propriety of summary judgment granted in favor of Pierce Jr. on appellants' breach-of-fiduciary-duty claim, appellants' opening brief again contains only conclusory paragraphs with limited record citations and is devoid of legal authority. *Cf.* TEX. R. APP. P. 38.1(i). Instead of providing substantive analysis, appellants merely restate Pierce Jr.'s summary-judgment arguments before stating that the trial court "erred if it granted summary judgment based on th[e] [particular] argument." This is not sufficient to challenge the trial court's granting of summary judgment on appellants' claim for breach of fiduciary duty by Pierce Jr. *See id.*; *Cruz*, 2016 WL 4119771, at *3 ("If an appellant presents an issue generally asserting the summary judgment evidence raised fact issues, that issue must also include argument and authority explaining how the evidence defeated each ground for summary judgment."); *Prasad*, 2013 WL 3877666, at *3 (appellant, whose brief provided "no substantive discussion of the issue he raise[d] or citation to any summary judgment proof to support [his] contention that [appellee] did not establish its right to summary judgment as a matter of law," waived challenge on appeal); *see also Littles*, 2018 WL 4781142, at *4 (appellant

_____

(Internal quotations omitted.) We do not consider the truthfulness of this explanation of the "Wyoming Transactions" in appellants' opening brief. For purposes of this opinion, it is simply quoted for context. We note that Pierce Jr., in his appellee's brief, states that "the so-called 'Wyoming Transactions' involved a series of events through which Elaine . . . , acting as trustee of a Marital Income Trust . . . created under the Last Will and Testament of [Pierce Sr.], changed the situs and certain terms of the [Marital Income Trust]. The Wyoming Transactions are the subject of separate litigation." (Internal quotations omitted.)

waived challenge to summary judgment ground on appeal where she did not "present[] a cogent argument with a discussion of the relevant facts and authorities relied upon related to her complaint that 'multiple fact[] issues abound in th[e] case'" (second alteration in original)).  We conclude that appellants have inadequately briefed their challenge to the trial court's granting of summary judgment on appellants' breach-of-fiduciary-duty claim in favor of Pierce Jr.  *See, e.g.*, *Hamilton v. Farmers Tex. Cnty. Mut. Ins. Co.*, 328 S.W.3d 664, 668 (Tex. App.—Dallas 2010, no pet.) (concluding issue inadequately briefed where appellant "complain[ed] that the trial court erred in granting summary judgment but his argument consist[ed] of conclusions and d[id] not provide proper, meaningful analysis in support of his contentions.  He neither cite[d] to any authority nor discusse[d] any applicable law with respect to the trial court's order or [appellee's] motion for summary judgment").

## F.    Declaratory-Relief Claim

In their eighth issue, appellants argue that the trial court erred in granting MarOpCo summary judgment on appellants' claim for declaratory relief because "Preston raised genuine disputes of material fact [as to] whether (1) the restrictive covenants in the 2014 [e]mployment [a]greement [were] unenforceable; (2) the entire 2014 [e]mployment [a]greement [was] unenforceable or should be rescinded; and (3) Preston should be reinstated as an officer of Trof."

In their eighth amended petition—appellants' live pleading at the time MarOpCo moved for summary judgment on appellants' declaratory-relief claim, appellants sought declaratory relief as to the enforceability of the restrictive covenants found in the 2014 employment agreement, declarations relating to their "data-related claims," including a declaration that Preston was "entitled to permanent access to all data removed from the [Tidwell] office" as well as a declaration that Preston should be reinstated as an officer of Trof.

In its summary-judgment motion, MarOpCo raised several arguments as to why it was entitled to summary judgment as a matter of law on appellants' declaratory-relief claim, including that appellants had requested declarations that were "not [the] proper subject matter for declaratory relief" as they did not "relate to rights under a written instrument, statute, ordinance, contract or franchise; an interest in a trust or estate; or sales and use taxes of another state." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (establishing proper subject matter of relief sought under Uniform Declaratory Judgment Act). In granting MarOpCo summary judgment on appellants' declaratory-relief claim, the trial court did not specify its reasons for doing so. Yet, appellants, in their briefing, do not address the above-referenced argument on which the trial court's summary-judgment ruling could have been based.

As previously explained, appellants must attack all independent bases or grounds that fully support the complained-of order or judgment, and if an independent ground fully supports the complained-of order or judgment, but the appellants assign no error to that independent ground, this Court must accept the validity of the unchallenged independent ground. *See Oliphant Fin.*, 295 S.W.3d at 423–24; *Britton*, 95 S.W.3d at 681. Further, we must affirm the complained-of summary-judgment order where appellants have not challenged all bases for the order or judgment. *See Miller*, 2016 WL 5399507, at *3; *see also In re A.K.P.*, 2020 WL 465281, at *2 ("When an appellant fails to challenge an alternate basis for the appealed order, any error in the challenged basis for the order is rendered harmless." (internal quotations omitted)).

Accordingly, we hold that the trial court did not err in granting MarOpCo summary judgment on appellants' declaratory-relief claim. *See Heritage Gulf Coast Props.*, 416 S.W.3d at 653 ("If the appellant fails to challenge all grounds on which the judgment may have been granted, the appellate court must uphold the summary judgment.").

We overrule appellants' eighth issue.

### Breach-of-Contract Claim and Counterclaim

In their eleventh issue, appellants argue that the trial court erred in ruling in favor of MarOpCo on Preston's breach-of-contract claim because "MarOpCo

undisputedly breached the 2014 [e]mployment [a]greement by refusing to pay Preston his accrued time off." In their thirteenth issue, appellants argue that the trial court erred in ruling in favor of MarOpCo on its breach-of-contract counterclaim against Preston because "MarOpCo ha[d] no evidence that Preston breached any provision of the 2014 [e]mployment [a]greement."

To challenge the sufficiency of the evidence in an appeal from a bench trial, appellants must challenge specific findings of fact, and not the judgment as a whole. *Ok Jin Kim v. Nunez*, No. 01-05-00636-CV, 2007 WL 274251, at *2 (Tex. App.—Houston [1st Dist.] Feb. 1, 2007, no pet.) (mem. op.); *see also Boucher v. Thacker*, 609 S.W.3d 206, 216 (Tex. App.—Texarkana 2020, no pet.); *Jones v. Smith*, 291 S.W.3d 549, 552 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Green v. Alford*, 274 S.W.3d 5, 17 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("[A]n appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact."). An appellate court is bound by any unchallenged findings of fact unless the contrary is established as a matter of law or the finding is not supported by any evidence. *See Nunez*, 2007 WL 274251, at *2.

As to appellants' complaint, in their eleventh issue, that the trial court erred in ordering that appellants take nothing on their breach-of-contract claim against MarOpCo, appellants do not challenge specific findings of fact made by the trial

court. *See Boucher*, 609 S.W.3d at 216. Instead, appellants generally challenge the trial court's judgment rejecting their claim that MarOpCo breached the 2014 employment agreement. *See Nunez*, 2007 WL 274251, at *2 ("[A]ppellant contends that the trial court erred in awarding damages to appellee because the evidence does not support the award. This complaint is directed to the judgment as a whole, not to a specific finding of fact; therefore, we do not address it."); *Arrellano v. State Farm Fire & Cas. Co.*, 191 S.W.3d 852, 855 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (declining to discuss issue because it challenged judgment and not specific findings of fact). There is competent evidence in the record that supports the trial court's unchallenged fact findings that "MarOpCo did not fail to comply with the [2014] [e]mployment [a]greement" and that "MarOpCo had the right to terminate the [2014] [e]mployment [a]greement at will." These unchallenged facts findings are binding on this Court. *See Nunez*, 2007 WL 274251, at *2; *see also Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 667 (Tex. App.—San Antonio 2008, no pet.). Further, these findings are sufficient to support the trial court's conclusion that Preston was "not entitled to recover on his claim for breach of the [2014] [e]mployment [a]greement." Thus, we hold that the trial court did not err in ruling in favor of MarOpCo on appellants' breach-of-contract claim.

70

We overrule appellants' eleventh issue.[27]

As to their thirteenth issue, appellants first argue, in a single sentence, that the trial court erred in rendering judgment in favor of MarOpCo on MarOpCo's breach-of-contract counterclaim because "MarOpCo failed to adhere to the notice and cure provisions in the 2014 [e]mployment [a]greement and thus waived its right to terminate Preston for cause, failed to properly terminate Preston, and waived any right to seek damages against Preston." Appellants, however, provide no substantive analysis, citation to authorities, or citation to the record to support their argument. A single sentence argument does not meet the requirements of Texas Rule of Appellate Procedure 38.1(i). *See* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Grooms v. Bank of N.Y. Mellon Tr. Co., N.A. ex rel. Mortg. Assets Mgmt. Series I Tr.*, No. 02-22-00396-CV, 2023 WL 4780584, at *8 (Tex. App.—Fort Worth July 27, 2023, no pet.) (mem. op.) (holding challenge inadequately briefed when appellant "addresses[ed] it in a total of three sentences with no citations to authority and no substantive legal analysis"). Thus, we hold that the argument is inadequately briefed, and we cannot sustain appellants' thirteenth issue on such a basis. *See*

---

[27] We also note that the entirety of appellants' argument related to their eleventh issue consists of one single paragraph which is devoid of substantive analysis, citation to pertinent authorities, and citations to the record. *See* TEX. R. APP. P. 38.1(i). We cannot sustain an issue which appellants do not adequately brief.

TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) ("Only when we are provided with proper briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other.").

Appellants next seem to assert ways in which they believe that "Preston did not breach" the 2014 employment agreement, and appellants state that "MarOpCo did not present . . . a scintilla of evidence that Preston failed to keep secret and confidential all non-public information concerning MarOpCo," "that Preston made statements or disclosures intended or reasonably likely to be detrimental to MarOpCo," "that Preston directly or indirectly solicited or induced one or more suppliers, proprietors, lenders, professionals, employees, joint ventures, investors, lessors, customers, agents, service providers, consultants or others in a business relationship with MarOpCo," "that Preston failed to promptly deliver and return all of MarOpCo's property upon his termination," or "that Preston failed to report regularly to the President of MarOpCo and undertake those acts as the President instructed him in writing."[28]

---

[28] We construe appellants' argument that "there [was] not a scintilla of reliable evidence in the record" as a challenge to the legal sufficiency of the evidence. *See Lloyd v. Tex. Dep't of Pub. Safety*, No. 07-23-00236-CV, 2023 WL 8287065, at *2 (Tex. App.—Amarillo Nov. 30, 2023, no pet.) (mem. op.) (internal quotations omitted).

72

When a party challenges the legal sufficiency of an adverse finding on which it did not bear the burden of proof, it must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011); *Republic Petroleum v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 433 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). And we must reject a party's no-evidence challenge unless: (1) there is a total absence of proof of a vital fact; (2) the court is barred by rules of law or evidence from crediting the only proof of a vital fact; (3) the proof of a vital fact is no more than a scintilla of evidence; or (4) the proof conclusively disproves a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *Id.* at 822.

The trial court, as the fact finder in a bench trial, is the sole judge of the witnesses' credibility and the relative weight of their testimony. *Republic Petroleum*, 474 S.W.3d at 433. The fact finder may believe one witness instead of another, accept or reject any given witness's testimony in whole or part, and resolve conflicts in the proof. *James J. Flanagan Shipping Corp. v. Del Monte Fresh Produce N.A., Inc.*, 403 S.W.3d 360, 367 (Tex. App.—Houston [1st Dist.] 2013, no pet.). In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict and are subject to review for sufficiency of

73

the evidence under the same standards that are applied when reviewing a jury's findings. *Briggs Equip. Tr. v. Harris Cnty. Appraisal Dist.*, 294 S.W.3d 667, 670 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Here, the trial court found that Preston "failed to comply with the [2014] [e]mployment [a]greement." The trial court also found that "[w]hen Preston . . . did work at MarOpCo's [Tidwell] [o]ffice, he worked on other business interests owned by him, including for Rusk Capital." And "Preston . . . improperly and extensively commingled MarOpCo's data and other property with what Preston . . . and Rusk Capital claimed to be their property."

The 2014 employment agreement, a copy of which was admitted into evidence at trial, stated that Preston agreed that while employed at MarOpCo, he would "devote [his] full time, energies and talents exclusively to serving in the capacity of Vice President," "act at all times in the best interests of" MarOpCo, and "perform the duties assigned to [him] by the President of [MarOpCo] faithfully, efficiently and in a professional manner."

It is undisputed that Preston created Rusk Capital in 2014 while employed by MarOpCo and conducted Rusk Capital business while employed by MarOpCo until his termination on June 11, 2015. Also, until the time of his termination in June 2015, Preston used the Tidwell office for Rusk Capital's business, and Preston maintained Rusk Capital documents at the Tidwell office.

74

Additionally, documents admitted into evidence at trial showed that Preston purchased the Rusk Capital server in 2014. Preston testified that he did not tell anyone at MarOpCo that he had bought the Rusk Capital server or that he was housing it at the Tidwell office. The Rusk Capital server was to be used for "Rusk Capital business," and Preston considered it to be the property of Rusk Capital. The Rusk Capital server was used at the Tidwell office by Rusk Capital until Preston's termination by MarOpCo in June 2015.

Preston also testified at trial that he personally migrated data belonging to MarOpCo from a MarOpCo-owned server in the Tidwell office to the Rusk Capital server.[29] Additionally, Preston removed certain software paid for by MarOpCo from the MarOpCo-owned server and moved it to the Rusk Capital server. Preston did not tell Elaine or anyone else at MarOpCo about the migration of data he performed. Preston also hired "a [third-party] company to do the migration" of the software to the Rusk Capital server, and had MarOpCo pay the bill.[30] Preston noted that a portion of the information that he had transferred from the MarOpCo-owned server to the Rusk Capital server was "proprietary to MarOpCo."

---

[29] Pierce Jr. similarly testified at trial that Preston "took all the data off the MarOpCo-owned server . . . and put it onto the server owned by Rusk Capital, as well as information that was on . . . two [MarOpCo] workstations." Further, according to Pierce Jr., Preston "improperly put the data on equipment not owned by MarOpCo."

[30] Documents admitted into evidence at trial show that Preston began speaking to the third-party company at the end of June 2014, and they spoke about the company performing its work around July 8, 2014 and July 9, 2014.

75

Preston also hired a Rusk Capital employee to work at the Tidwell office, without notifying Elaine. MarOpCo-owned data was still on the Rusk Capital server at the time of Preston's termination in June 2015.

After reviewing the evidence in the light most favorable to the trial court's findings, we hold that there was legally sufficient evidence to support the trial court's finding that Preston breached the 2014 employment agreement.

We overrule appellants' thirteenth issue.

### Trespass Counterclaim

In their fourteenth issue, appellants argue that the trial court erred in ruling in favor of MarOpCo on its trespass counterclaim against Preston because "MarOpCo ha[d] no evidence that Preston trespassed."

In their opening brief, appellants' entire argument on their fourteenth issue consists of four sentences:

> The [trial court's] January 13, 2023 Amended Final Judgment "ORDERS that MarOpCo, Inc. is awarded and shall recover $10 from Preston . . . as nominal damages for trespass by Preston . . . on the property of MarOpCo, Inc." The Court should reverse and remand this judgment because it is factually deficient. Preston was invited to return to the Tidwell Office to sign a check after his termination. There is no basis to accuse him of trespass given this fact.

Notably lacking from appellants' briefing is any substantive analysis, citation to appropriate authorities, and citation to the record.

76

As previously explained, Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Tesoro Petroleum Corp.*, 106 S.W.3d at 128. The failure to provide substantive analysis of an issue or cite appropriate authority or the record waives a complaint on appeal. *Marin Real Estate Partners*, 373 S.W.3d at 75; *Huey*, 200 S.W.3d at 854; *see also Irisson*, 2020 WL 6343336, at *2–3 ("When an appellant's brief fails to contain clear and concise argument for the contentions made with appropriate citations to authorities, the appellate court is not responsible for doing the legal research that might support a party's contentions."). Accordingly, we hold that appellants have waived their fourteenth issue due to inadequate briefing.

**Property Award**

In their twelfth issue, appellants argue that the trial court erred "in awarding [certain tangible] property to MarOpCo" because the property "undisputedly belong[ed] to Preston."

Appellants, in their briefing, appear to complain about the following orders made by the trial court in its final judgment:

- The Court ORDERS that MarOpCo . . . is awarded and shall recover a constructive trust over the server and two

77

workstations purchased by Rusk Capital . . . at issue in this suit, currently in the possession of CyberEvidence.

- The Court ORDERS that MarOpCo . . . is awarded and shall recover the possession and return of all computer devices and equipment at issue in this suit currently in the possession of CyberEvidence pursuant to the prior order of this Court, which is now superseded by this judgment, including the MarOpCo-owned laptop that Preston . . . used during his MarOpCo employment.

- The Court ORDERS that MarOpCo . . . is awarded and shall recover from Preston . . . and Rusk Capital . . . the immediate return of all MarOpCo.com email files in their possession as well as all originals and copies of data, documents, materials, and information they received from CyberEvidence in this suit.

However, appellants in their opening brief do little more than make conclusory statements that "the property" awarded to MarOpCo by the trial court, "belonged to Preston," without citation to appropriate authority to support their statements. *Cf.* TEX. R. APP. P. 38.1(i); *Tesoro Petroleum Corp.*, 106 S.W.3d at 128; *see also N & A Props., Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 568 (Tex. App.—El Paso 2022, no pet.) (uttering conclusory statements does not satisfy briefing requirements). This is not sufficient to properly brief an issue for appeal.

Appellants also do not challenge any specific findings of fact made by the trial court related to the property awarded to MarOpCo in the trial court's final judgment. *See Boucher*, 609 S.W.3d at 216; *see also Nunez*, 2007 WL 274251, at *2 ("[A]ppellant contends that the trial court erred in awarding damages to appellee because the evidence does not support the award. This complaint is

78

directed to the judgment as a whole, not to a specific finding of fact; therefore, we do not address it."). For instance, in this case, the trial court made the following pertinent findings of fact:

15. The [2014] [e]mployment [a]greement established ownership of data and documents by providing that documentation relating to the present or planned business of MarOpCo or any of its affiliates "shall remain the sole and exclusive property of [MarOpCo]."

16. The laptop that Preston . . . used while employed at MarOpCo was owned by MarOpCo.

17. MarOpCo's President specifically informed and instructed Preston . . . that he had no expectation of privacy related to MarOpCo.com emails or documents, data, or information stored on MarOpCo-owned computers.

. . . .

22. While working for MarOpCo, Preston . . . transferred or caused to be transferred MarOpCo's confidential information to a new server that Preston . . . purchased through Rusk Capital without the knowledge or authorization of MarOpCo.

23. Preston . . . effected that transfer for the purpose of denying MarOpCo access to its own data.

24. Preston . . . improperly and extensively commingled MarOpCo's data and other property with what Preston . . . and Rusk Capital claimed to be their property.

. . . .

29. After his termination, Preston . . . improperly retained copies of MarOpCo.com emails.

. . . .

31.    Preston . . . , individually, failed to present evidence concerning his claim of ownership of or entitlement to any specific or identifiable documents, data, emails, materials, or information.

. . . .

33.    The MarOpCo-owned laptop that Preston . . . used while he was employed by MarOpCo included emails transmitted on Preston['s] . . . MarOpCo.com email account between Preston . . . and his attorney, Kenneth Michael Wright ("Mr. Wright").

34.    The emails were all found on Preston['s] . . . MarOpCo-owned laptop.

. . . .

36.    Preston . . . waived any privilege he may have had by transmitting emails to and from his lawyer on a MarOpCo.com email account.

. . . .

40.    The copies of Marshall Family Meeting minutes and the binders for those Meetings located at MarOpCo's [Tidwell] [o]ffice, which were managed and maintained by MarOpCo employees, and the audio recordings of such Meetings are the property of MarOpCo.

. . . .

45.    Preston . . . had no reasonable expectation of privacy in any documents, emails, materials, information, or data that he placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

46.    Rusk Capital had no reasonable expectation of privacy in any documents, emails, materials, information, or data that it placed

or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

47. Preston . . . , individually, ha[d] no ownership or other interest in any documents, emails, materials, information, or data that he placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

48. Rusk Capital ha[d] no ownership or other interest in documents, emails, material, data, or information that Preston . . . placed or caused to be placed on the computer equipment of MarOpCo or transmitted to or from a MarOpCo.com email address.

49. Preston . . . and Rusk Capital acted inconsistently with their alleged claims of ownership over the server and computer equipment when the equipment was used for MarOpCo business and when they placed, or caused to be placed, MarOpCo documents, emails, material, data, or information onto the computer equipment and server.

50. MarOpCo did not wrongfully exercise dominion or control over any alleged property of Preston . . . . MarOpCo did not unlawfully access any alleged property of Preston . . . .

51. MarOpCo did not wrongfully exercise dominion or control over any alleged property of Rusk Capital. MarOpCo did not unlawfully access any alleged property of Rusk Capital.

52. Preston . . . and Rusk Capital wrongfully exercised dominion or control over MarOpCo's property. Preston . . . and Rusk Capital unlawfully accessed MarOpCo's property.

53. Preston . . . and Rusk Capital intended to use data and information belonging to MarOpCo in a manner that was inconsistent with MarOpCo's rights. . . . .

54. Preston . . . and Rusk Capital exercised dominion and control over MarOpCo's property without MarOpCo's consent to the exclusion of its right of use and possession.

81

. . . .

57. Preston . . . and Rusk Capital acted inconsistently with their alleged claims of ownership over the server and computer equipment when the equipment was used for MarOpCo business and when they placed, or caused to be placed, MarOpCo documents, emails, material, data, or information onto the computer equipment and server.

. . . .

62. Preston . . . knowingly and intentionally accessed, imaged, and moved MarOpCo's databases without MarOpCo's consent.

63. Preston . . . knowingly and intentionally copied MarOpCo's emails and data and allowed a third party access to the data.

As previously explained, to challenge the sufficiency of the evidence in an appeal from a bench trial, appellants must challenge specific findings of fact, and not the judgment as a whole. *Nunez*, 2007 WL 274251, at *2; *see also Boucher*, 609 S.W.3d at 216; *Jones*, 291 S.W.3d at 552; *Green*, 274 S.W.3d at 17 ("[A]n appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact."). This Court is bound by any unchallenged findings of fact unless the contrary is established as a matter of law or the finding is not supported by any evidence. *See Nunez*, 2007 WL 274251, at *2. Here, there is competent evidence in the record that supports the trial court's unchallenged findings of fact, and the above referenced unchallenged fact findings are binding

on this Court. Thus, we hold that the trial court did not err in awarding MarOpCo certain tangible property in its final judgment.

We overrule appellants' twelfth issue.

## Disgorgement Award

In their fourth issue, appellants argue that the trial court erred in awarding MarOpCo "$446,397 from Preston . . . as disgorgement of salary" because the "award [was] not consistent with Texas law." (Internal quotations omitted.)

Under the equitable remedy of disgorgement, a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust. *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999); *see also Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 729 (Tex. 2016) (recognizing disgorgement as remedy for breach of fiduciary duty). The remedy essentially returns to the principal the value of what it paid for because it did not receive the trust or loyalty. *Burrow*, 997 S.W.2d at 237–38; *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 904–05 (Tex. App.—Dallas 2014, pet. denied).

We review a trial court's disgorgement determination for an abuse of discretion. *Dernick Res., Inc. v. Wilstein*, 471 S.W.3d 468, 482 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules or

principles. *Miller v. Kennedy & Minshew, Prof'l Corp.*, 142 S.W.3d 325, 339 (Tex. App.—Fort Worth 2003, pet. denied). To obtain the remedy of equitable disgorgement, proof of the fiduciary's salary, profits, or other income during the time of his breach of fiduciary duty is required, as well as proof of what he was actually entitled to receive. *See McCullough*, 435 S.W.3d at 904–05.

Here, the trial court issued the following relevant findings of fact related to its disgorgement award:

**Breach of Fiduciary Duty**

64. A relationship of trust and confidence existed between MarOpCo and Preston . . . .

65. During his employment at MarOpCo, Preston . . . served as an officer of MarOpCo.

66. MarOpCo justifiably placed trust and confidence in Preston . . . to act in MarOpCo's best interest.

67. MarOpCo's trust and confidence in Preston . . . was not based merely on subjective trust and feelings alone.

68. Preston . . . failed to comply with the following duties that he owed to MarOpCo:

- Preston . . . made unreasonable use of the confidence that MarOpCo placed in him.

- Preston . . . failed to act in the utmost good faith and to exercise the most scrupulous honesty toward MarOpCo.

- Preston . . . placed his own interests before the interests of MarOpCo.

- Preston . . . used the advantage of his position to gain benefit for himself at the expense of MarOpCo.

69. Preston . . . breached his fiduciary duties owed to MarOpCo.

70. From the time of the commencement of Preston['s] . . . breaches of fiduciary duty on July 16, 2014 . . . , his net salary from MarOpCo amounted to $446,397.

The trial court then concluded that MarOpCo was "entitled to a disgorgement of net salary paid to Preston . . . after the commencement of his breaches of fiduciary duty in the amount of $446,397."

Appellants first seem to assert, in their briefing, that the trial court arbitrarily picked July 16, 2014 as the date Preston began breaching his fiduciary duties to MarOpCo and thus disgorgement of Preston's salary from that date forward was improper.

At trial, Preston testified that MarOpCo had its own server located at the Tidwell office. By 2014, the MarOpCo-owned server had been operating for about eleven years. MarOpCo would store MarOpCo-related information on its server, with some of the information being highly sensitive.

Documents admitted into evidence at trial showed that Preston purchased the Rusk Capital server in June 2014. Preston testified that he did not tell anyone at MarOpCo that he bought the Rusk Capital server or that he was housing it at the Tidwell office. The Rusk Capital server was to be used for "Rusk Capital business," and Preston considered it to be the property of Rusk Capital.

Preston further testified that in July 2014, he personally migrated data belonging to MarOpCo from the MarOpCo-owned server at the Tidwell office to the Rusk Capital server.[31]  Additionally, Preston removed certain software paid for by MarOpCo from the MarOpCo-owned server and moved it to the Rusk Capital server.  Preston did not tell Elaine or anyone else at MarOpCo about the migration of data he performed.  Preston also hired "a [third-party] company to do the migration" of the software to the Rusk Capital server, and Preston had MarOpCo pay the bill.[32]  Preston noted that a portion of the information that he had transferred from the MarOpCo-owned server to the Rusk Capital server was "proprietary to MarOpCo."

Sheena Bonadona, the corporate controller for MarOpCo, testified that Preston's employment with MarOpCo was terminated on June 11, 2015, and Preston "was paid through June 15th."  Further, Bonadona stated that from July 16, 2014 to June 15, 2015, Preston was paid $446,397 in salary by MarOpCo.

---

[31]  Pierce Jr. similarly testified at trial that Preston "took all the data off the MarOpCo-owned server . . . and put it onto the server owned by Rusk Capital, as well as information that was on . . . two [MarOpCo] workstations."  Further, according to Pierce Jr., Preston "improperly put the data on equipment not owned by MarOpCo."

[32]  Documents admitted into evidence at trial show that Preston began speaking to the third-party company at the end of June 2014, and they spoke about the company performing its work around July 8, 2014 and July 9, 2014.  July 16, 2014 was the beginning of the pay period that commenced after Preston had data and software belonging to MarOpCo migrated from a MarOpCo-owned server at the Tidwell office to the Rusk Capital server.

In a bench trial, the trial court is the fact finder and the sole judge of the credibility of the witnesses and the weight of their testimony. *See City of Keller*, 168 S.W.3d at 819; *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The trial court also resolves any inconsistencies or conflicts in the evidence, and we may not substitute our judgment for that of the trial court. *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 698 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Here, we cannot conclude, as appellants would like, that the trial court's disgorgement of Preston's salary from July 16, 2014 forward was improper because the date selected by the trial court was purportedly arbitrary.[33]

Appellants next argue that the trial court erred in awarding MarOpCo disgorgement of Preston's salary in the amount of $446,397 because the trial court failed to make findings purportedly required by the Texas Supreme Court in *Burrow*.

In *Burrow*, the Texas Supreme Court set forth a list of certain non-exclusive factors, that the trial court may consider in determining whether disgorgement is appropriate to address a breach of fiduciary duty and if so, the amount. *See Burrow*, 997 S.W.2d at 243; *see also Diakiw v. Sites Mgmt., L.L.C.*, 693 S.W.3d 582, 595 (Tex. App.—Houston [14th Dist.] 2023, pet. denied). These factors

---

[33] Instead, the date reflects the beginning of the pay period following Preston's migration of MarOpCo data and software to the Rusk Capital server.

include: "[t]he gravity and timing of the breach of duty, the level of intent or fault, whether the principal received any benefit from the fiduciary despite the breach, the centrality of the breach to the scope of the fiduciary relationship, and any threatened or actual harm to the principal." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 875 (Tex. 2010) (citing *Burrow*, 997 S.W.2d at 243–44); *see also Thomas v. Hughes*, No. SA-16-CV-00951-DAE, 2020 WL 773444, at *4 (W.D. Tex. Feb. 18, 2020) (report and recommendation) (list of *Burrow* factors considered "not exclusive"). Ultimately though, the propriety of disgorgement must be determined based on the equity of the circumstances. *See Diakiw*, 693 S.W.3d at 595.

Although appellants complain that the trial court "refused to consider the [*Burrow*] factors" before ordering disgorgement of a portion of Preston's salary, appellants do not direct the Court to a portion of the record indicating such. Instead, appellants seem to fault the trial court for not entering specific findings of fact addressing the non-exclusive factors set forth by the Texas Supreme Court in *Burrow*.[34] But appellants did not request findings of fact related to the *Burrow* factors, and after the trial court issued its findings of fact, appellants did not request additional findings that they believed the trial court should have made.

---

[34] For purposes of this portion of the memorandum opinion, we will presume, without deciding, that the trial court did not enter findings of fact on the *Burrow* factors.

88

After a trial court files original findings of fact and conclusions of law, any party may file a request for specific additional or amended findings or conclusions within ten days after the filing of the original findings and conclusions by the trial court. *See* TEX. R. CIV. P. 298; *Villalpando v. Villalpando*, 480 S.W.3d 801, 809–10 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The failure of a party to request amended or additional findings of fact or conclusions of law waives the party's right to complain on appeal about the trial court's failure to make the omitted findings or conclusions. *Villalpando*, 480 S.W.3d at 810. Because appellants failed to request additional findings of fact related to the *Burrow* factors—which appellants assert the trial court erroneously failed to make—we hold that appellants have waived their complaint on appeal that the trial court erred by failing to make the purportedly omitted findings. *Id.*; *see also Diakiw*, 693 S.W.3d at 595–96 (appellants waived complaint trial court erred in awarding equitable relief because no findings supported it).

We overrule appellants' fourth issue.

## Attorney's Fees

In their first, second, and third issues, appellants argue that the trial court erred in awarding MarOpCo attorney's fees because MarOpCo was not "a prevailing party entitled to attorney['s] fees" under the 2014 employment agreement, MarOpCo "failed to segregate its recoverable fees and expenses," and

MarOpCo failed to prove that the requested attorney's fees were reasonable and necessary.

We review a trial court's award of attorney's fees for an abuse of discretion. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 742 (Tex. 2018); *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Under this standard, we cannot reverse the trial court's award merely because we would have awarded a different amount of fees. *See Samlowski*, 332 S.W.3d at 410 (noting abuse-of-discretion standard of review insulates trial court's reasonable decisions from appellate second-guessing). "Further, courts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties to determine a reasonable fee." *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Santos v. Tex. Enters., Inc.*, No. 03-09-00579-CV, 2010 WL 4054479, at *2 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.).

Attorney's fees are not recoverable in Texas unless allowed by contract or statute. *Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex.

1992); *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 705 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Here, the parties agree that the 2014 employment agreement provides that in "any legal action or other proceeding," which "is brought[] for the enforcement or interpretation of any of the terms or conditions of" the agreement, or "because of an alleged dispute, breach, or default, in connection with any of the provisions of" the agreement, "the prevailing party in such action shall be entitled to recover from the non-prevailing party the reasonably incurred costs it incurred in such action including, but not limited to, reasonable attorney['s] fees (including costs and fees incurred on appeal)," "in addition to any other relief to which such party may be entitled."

In the trial court's final judgment, it ordered Preston to pay MarOpCo $10,213,889 in attorney's fees. Appellants first argue that MarOpCo was not entitled to the trial court's award of attorney's fees because MarOpCo was not a "prevailing party" under the 2014 employment agreement.

The 2014 employment agreement did not define the term "prevailing party." Thus, we presume that the parties intended the term's plain and ordinary meaning. *See Valence Operating*, 164 S.W.3d at 662; *SEECO, Inc. v. K.T. Rock, LLC*, 416 S.W.3d 664, 674 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Courts have interpreted the term "prevailing party" to "mean the party that prevails on the main issue in the litigation." *SEECO, Inc.*, 416 S.W.3d at 674. In other words,

91

"[a] prevailing party is the party who successfully prosecutes the action or successfully defends against it." *Silver Lion, Inc. v. Dolphin St., Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *18 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.) (internal quotations omitted). A defendant prevails if it obtains a take-nothing judgment on the main issue in the case. *See SEECO, Inc.*, 416 S.W.3d at 674; *Bhatia v. Woodlands N. Houston Heart Ctr., PLLC*, 396 S.W.3d 658, 670 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

Appellants brought numerous claims against MarOpCo, including claims for wrongful termination of the 2014 employment agreement and breach of the 2014 employment agreement. And the trial court ordered that appellants take nothing on their claims against MarOpCo. As the Texas Supreme Court has explained, "[a] defendant can obtain actual and meaningful relief, materially altering the parties' legal relationship, by successfully defending against a claim and securing a take-nothing judgment on the main issue or issues in the case." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 486 (Tex. 2019). Accordingly, based on the trial court's take-nothing judgment of appellants' claims, MarOpCo was a "prevailing party" under the 2014 employment agreement and was entitled to reasonable and necessary attorney's fees. *See id.*

We overrule appellants' first issue.

Appellants next argue that MarOpCo was not entitled to $10,213,889 in attorney's fees because it "failed to segregate its recoverable fees and expenses." Generally, a party seeking attorney's fees must segregate fees incurred in connection with a claim that allows their recovery from fees incurred in connection with claims for which no such recovery is allowed. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006); *Canyon Reg'l Water Auth. v. Guadalupe Blanco River Auth.*, 286 S.W.3d 397, 406 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.). But when discrete legal services advance both recoverable and unrecoverable claims, attorneys are not required to segregate fees to recover the total amount covering all claims. *See Chapa*, 212 S.W.3d at 313–14. In this situation, the claims are said to be "intertwined," and the mere fact that attorney's fees are incurred in advancing both recoverable and unrecoverable claims does not render those fees unrecoverable. *See id.*

In their opening brief, appellants assert that "neither MarOpCo nor the [trial] [c]ourt properly segregated MarOpCo's recoverable fees and expenses" and as such "remand is required." (Internal quotations omitted.) Although appellants complain that a certain undisclosed amount of attorney's fees and expenses awarded by the trial court should have not been included in the trial court's attorney's-fees award, appellants fail to include record citations to those fees and expenses that they assert were erroneously included. *Cf.* TEX. R. APP. P. 38.1(i).

93

Instead, appellants generally assert, without citation or specificity, that the trial court's attorney's-fees award erroneously included "fees and expenses that MarOpCo did not plead for," "[f]ees and expenses outside the scope of [p]aragraph 20 of the 2014 [e]mployment [a]greement," "[f]ees and expenses on counterclaims MarOpCo lost," "[f]ees and expenses not supported by the [trial] [c]ourt's conclusions of law," "[f]ees for paralegal time," "[n]on-cost litigation expenses," and "[f]ees and expenses against Rusk [Capital]." (Emphasis omitted.) As to what portions of MarOpCo's attorney's-fees evidence contained requests that were unrecoverable, yet still awarded by the trial court, appellants' briefing is devoid of record citations.

It is not the appellate court's duty to scour through a voluminous record and find facts to support a party's position. *See Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 328 (Tex. App.—Amarillo 2003, no pet.) (explaining it is not appellate court's duty to search for evidence that supports a party's contention in a multi-volume trial record). In fact, "[e]ngaging in a review of [a] voluminous record without adequate record citations is almost impossible." *Telegina v. Nechayuk*, No. 09-22-00383-CV, 2024 WL 5080262, at *3 (Tex. App.—Beaumont Dec. 12, 2024, no pet. h.) (mem. op.). The clerk's record in this case contains more than 14,000 pages. And as MarOpCo notes in its briefing, it "filed over 1,000 pages of documentation, including detailed attorney invoices," to support its request for

attorney's fees. "[W]ithout proper citation, the voluminous nature of th[e] record makes it difficult to discern whether there is any support for . . . [appellants'] complaint[]." *Reule v. M & T Mortg.*, 483 S.W.3d 600, 615 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). Thus, we hold that appellants' complaint that MarOpCo "failed to segregate its recoverable fees and expenses" is inadequately briefed and appellants waived their second issue. *See* TEX. R. APP. P. 38.1(i).

Finally, appellants argue that the trial court erred in awarding MarOpCo $10,213,889 in attorney's fees because it failed to prove that the requested attorney's fees were reasonable and necessary. However, appellants' analysis of the purported reasonableness of MarOpCo's attorney's fees' request consists of less than ten sentences in their opening brief. *Cf. id.* Appellants make a conclusory statement that "MarOpCo did not bother to calculate a lodestar" and "[t]he *Arthur Andersen* factors also require[d] a significantly lower lodestar." *See Banakar v. Krause*, 674 S.W.3d 564, 578–79 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (appellant "may not obtain appellate review of an issue by making bare assertions of error").

The amount of attorney's fees awarded by the trial court in a bench trial is reviewed for an abuse of discretion. *Wilstein*, 471 S.W.3d at 490. An attorney's fees award must be supported by evidence that the fees are reasonable and necessary. *Id.* "The reasonableness of attorney's fees is ordinarily left to the

factfinder . . . ." *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). A trial court determines the reasonableness of the amount awarded as attorney's fees by considering eight nonexclusive factors enumerated in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997). *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017) (orig. proceeding); *Wilstein*, 471 S.W.3d at 490; *see also Smith*, 296 S.W.3d at 548 ("We have held that the *Arthur Andersen* factors apply to fee awards made by trial courts, not just juries."). Those factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on the results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen*, 945 S.W.2d at 818.

Appellants, in their opening brief, do not actually perform any analysis related to the *Arthur Andersen* factors of which they accuse MarOpCo of running

afoul. Instead, appellants, in a single sentence, assert that "[t]he fourth factor ('the amount involved and the results obtained') require[d] a reduction because MarOpCo obtained only $20 in nominal damages, the return of computer equipment . . . , and disgorgement of $446,397." *See Littles*, 2018 WL 4781142, at *6 (appellate complaint waived where appellant offered little discussion and even less support for her argument). Appellants also do not perform any substantive analysis to support their statement that "MarOpCo did not bother to calculate a lodestar." *See id.* Based on the foregoing, we hold that appellants have inadequately briefed their "reasonable and necessary" complaint and appellants have waived their third issue due to inadequate briefing.[35] *See M&E Endeavors LLC v. Air Voice Wireless LLC*, Nos. 01-18-00852-CV, 01-19-00180-CV, 2020 WL 5047902, at *7 (Tex. App.—Houston [1st Dist.] Aug. 27, 2020 no pet.) (mem. op.) ("The [appellate] briefing requirements are mandatory . . . .").

---

[35] After MarOpCo pointed out appellants' briefing deficiency, appellants, in their reply brief, assert that they "raised several specific argument[s] and analysis showing that the record and the law support[ed] their contentions." (First alteration in original) (Internal quotations omitted.) To the extent that appellants raise arguments in their reply brief, not previously contained in their opening brief, it is improper to do so. *See Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.) ("[A] party may not present arguments for the first time in its reply brief."); *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 n.18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Pointing out the absence of an appellant's argument does not raise the argument or entitle appellant to assert that argument . . . in his reply brief. If the rule were construed otherwise, an appellee could never point out matters not raised by an appellant for fear of reopening the door." (emphasis omitted)).

## Jury Waiver

In their fifteenth, sixteenth, and seventeenth issues, appellants argue that the trial court erred in granting appellees' "joint motion to strike [appellants'] jury demand" because the jury-waiver provision in the 2014 employment agreement did not apply to the claims appellants brought against Pierce Jr. or to the claims Rusk Capital brought against appellees. Further, appellants assert that the jury waiver provision in the 2014 employment agreement did not apply to appellants' "claims that did not arise out of the 2014 [e]mployment [a]greement."

In their opening brief, appellants assert that this Court should reverse the trial court's May 17, 2019 order granting appellees' joint motion to strike appellants' jury demand "if the Court remands [this case] for trial on any issue." Here, however, we have not sustained any of appellants' other issues; thus, based on appellants' briefing, we need not address its fifteenth, sixteenth, and seventeenth issues because the Court is not "remand[ing] [the case] for trial on any issue." *See* TEX. R. APP. P. 47.1.

## Conclusion

We affirm the judgment of the trial court. We dismiss any pending motions as moot.

Clint Morgan
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Morgan.